No. 87-513,
87-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

No. 87-513

DONALD W. LAKE and BERNADINE A. LAKE,
husband & wife,
        Plaintiffs and Appellants.
    -vs-

LAKE COUNTY, MONTANA, and INDIVIDUAL
MEMBERS OF THE LAKE COUNTY BOARD OF
COMMISSIONERS,
        Defendants and Respondents.

No. 87-542

THE CITY OF RONAN, a Montana Municipal
corporation,
        Plaintiff and Respondent,
    -vs-
DONALD WILLIAM LAKE, a/k/a DONALD W. LAKE,
and BERNADINE A. LAKE,
        Defendants and Appellants.


APPEAL FROM:  District Court of the Twentieth Judicial District,
              In and for the County of Lake,
              The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:
        Edward K. Duckworth, Ronan, Montana

    For Respondent:
        William H. Coldiron; Gough, Shanahan, Johnson &
        Waterman, Helena, Montana
        Larry J. Nistler, County Attorney, Polson, Montana
    For Amicus Curiae:  (David Tilton, Deputy County Atty.)
        Philip J. Grainey; French Mercer & Grainey, Polson,
        Montana


                    Submitted on Briefs:  June 9, 1988

                        Decided:  August 2, 1988

Filed:  AUG 2  1988

                    Ethel M. Harrison

                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This action was commenced as an eminent domain proceeding brought by the City of Ronan (Ronan) to condemn land owned by the Lakes in furtherance of an airport expansion project. Donald and Bernadine Lake responded by seeking a preliminary injunction halting the action by Ronan, summary judgment and a delay in the proceedings. The Lakes also sought a preliminary injunction against Lake County prohibiting funding of Ronan's actions. Following a hearing, the District Court of the Twentieth Judicial District, Lake County, issued orders denying the Lake's motions and quashing the motion for preliminary injunction as to Lake County. We affirm.

The issues before the Court are:

1. Does formation of a joint airport board pursuant to § 67-10-204, -206, MCA, preclude independent exercise of the power of eminent domain by a member municipality for airport purposes?

2. Does Ronan's independent eminent domain proceeding constitute a violation of the Lakes' right to due process?

3. Did the District Court err in denying the Lakes' application for a preliminary injunction against Ronan?

4. Did the District Court err in granting Lake County's motion to quash the Lakes' application for a preliminary injunction?

On October 16, 1947, Lake County, the City of Polson, the Town of St. Ignatius, and Ronan entered an agreement providing for the establishment of a joint airport board. As the original agreement neared its expiration date, the parties again joined together in an attempt to further the

- 2 -

public good.    On March 18, 1966, the parties entered an agreement for a term of 25 years which, as amended, provides, in pertinent part:

I

CREATION OF JOINT BOARD

There is hereby created, pursuant to the provisions of Chapter 288, Laws of 1947, a Joint Airport Board, to have, and which shall have, the jurisdiction over the planning, acquiring, establishment, development, construction, enlargement, improvement, maintenance, equipment, operation, regulation, protection and policing of said joint airports or landing fields or other air navigation facilities established, owned or controlled, or to be established, owned or controlled by the county and cities and town aforementioned, located upon the sites above mentioned and which shall have, as well, jurisdiction over the airport hazards as authorized by Chapter 288, Laws of 1947.

V

POWERS AND DUTIES

The Joint Airport Board created and established hereby shall have the following powers and duties:

(1) To provide for the planning, acquisition, establishment, development, construction, enlargement, improvement, maintenance, equipment, operation, regulation, protection and policing of the joint airports or landing fields on the sites above described, and other air navigation facilities established thereon or to be established thereon and all airport hazards, but the said Joint Airport Board shall make no contract nor incur any obligation for such purposes, nor for any one of them, which singly or in the aggregate shall involve an expenditure of any more money than is available under the Joint Airport Board Budget for such purpose.

The agreement does not vest the joint airport board with the power to tax or the power of eminent domain. In addition, although the agreement provides for joint ownership of the various airports, Ronan has held record fee simple title to the Ronan airport property since its construction in the early 1950's. The controversy at hand arises as a result of Ronan's efforts to condemn the Lake's land in order to expand the airport without benefit of the consent and approval of the joint airport board.

On August 29, 1986, Ronan and Lake County jointly applied to the Federal Aviation Administration (FAA) for an airport expansion grant in order to fund acquisition of the land. Following approval of a $256,500 grant by the FAA, and written acceptance of the same by Ronan and Lake County, the money was deposited in the "Airport Fund for the City of Ronan." Shortly thereafter, Ronan began eminent domain proceedings against the Lakes. Ronan's efforts were funded by the "Airport Fund for the City of Ronan."

## EMINENT DOMAIN

The crucial question is the effect of the 1966 agreement entered into by Ronan and the other signators. The Lakes argue that as a result of the adoption of the joint airport board agreement, § 67-10-205(2)(c), MCA, mandates that Ronan may bring an eminent domain proceeding for airport purposes only as a joint action with the other signators. We conclude, however, that the Lakes take an overly narrow view of Ronan's power of eminent domain.

Generally, the power of eminent domain is viewed as an inherent attribute of sovereignty existing without reliance on constitutional acknowledgement. State v. Aitchison (1934), 96 Mont. 335, 341, 30 P.2d 805, 808. At its heart, the sovereign's right of eminent domain is little more than an embodiment of the principle that the rights of the

- 4 -

individual sometimes pale in comparison with the needs of the common welfare. Butte, Anaconda & Pacific Ry. v. Montana Union Ry. Co. (1895), 16 Mont. 504, 536, 41 P. 232, 243. It is a right necessarily incident to the government's duty to serve the common need and advance the general welfare.

From the days of early statehood, the legislature has recognized the need to endow municipalities with the power of eminent domain for the good of the whole. Consequently, with the advent of the broad availability of commercial aviation, the 1947 Montana Legislature acted to ensure that Montanans would reap the benefits inherent in increased air service. See, Ch. 288, Laws of Montana (1947). Then, as now, "Expansion, not restriction, [was] the legislative watchword." See Montana Talc Co. v. Cyprus Mine Co. (1987), 748 P.2d at 444, 448, 44 St.Rep. 2161, 2166.

Chapter 288 of the Laws of Montana (1947), declared itself to be an act "providing for acquisition, construction, maintenance, operation, and regulation" of airports by municipalities and counties. In addition, the Act authorizes counties and municipalities to accomplish this task either jointly or separately, through the use of eminent domain. See, Ch. 288, §§ 3, 14, Laws of Montana (1947). However, consistent with the broad grant of authority embodied by the Act, and the earlier enactments of the 1929 legislature granting similar rights, the 1947 legislation did not specifically provide that the creation of a joint airport board constituted a waiver of the right to independent action. Both the 1929 and 1947 Acts, as codified in Title 67, Ch. 10, remain substantially unchanged.

At issue in the instant case is the interaction of the various sections of Title 67, Ch. 10. The statutes at issue provide in pertinent part:

67-10-102.   Acquisition and establishment of airports and landing fields.   (1)   Counties, cities, and towns in this state may, either individually or by the joint action of a county and one or more of the cities and towns within its border, acquire by gift, deed, purchase, or condemnation land for airport or landing field purposes and thereon establish, construct, own, control, lease, equip, improve, operate and regulate airports . . ..

(2)   In addition a county, city, or town may do the acts authorized by this section by acting jointly with one or more counties, with one or more cities, with one or more towns, or any combination of such counties, cities, or towns . . .

67-10-103.   Public purpose.   (1)   Any lands acquired, owned, controlled, or occupied by any county, city, or town, individually or pursuant to joint action as herein provided for the purposes enumerated in 67-10-102, are acquired, owned, controlled, and occupied for a public use and as a matter of public necessity, and such counties, cities, and towns, whether acting individually or jointly, have the right to acquire property for such purposes under the power of eminent domain as and for a public use or necessity.

(2)   The acquisition of any land or interest therein pursuant to this chapter; the planning, acquisition, establishment, development, construction, improvement, maintenance, equipment, operation, regulation, protection, and policing of airports and air navigation facilities, including the acquisition or elimination of airport hazards; and the exercise of any other powers herein granted to municipalities and other public agencies, to be severally or jointly exercised, are public and governmental functions, exercised for a public purpose and matters of public necessity . . .

67-10-201.   General municipal powers   (1)   Every municipality may, out of any appropriations or other money made available for such purposes, plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police airports and air navigation facilities, either within or without the

territorial limits of such municipality and within or without the territorial boundaries of this state, including the construction, installation, equipment, maintenance, and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accomodation of air travelers and the purchase and sale of supplies, goods, and commodities as an incident to the operation of its airport properties. For such purposes the municipality may use any available property that it may now or hereafter own or control and may, by purchase, gift, devise, lease, eminent domain proceedings, or otherwise, acquire property, real or personal, or any interest therein,. . .

67-10-202. Creation of board--funding--rules. (1) The county, city, or town, acting individually or acting jointly as authorized by 67-10-102, having established an airport or landing field and acquired property for such purpose, may construct, improve, equip, maintain, and operate the same and for that purpose may create a board or body from the inhabitants of such county, city, or town, or such joint subdivisions of the state for the purpose of conferring upon them, and may confer upon them, the jurisdiction for the improvement, equipment, maintenance, and operation of such airport or landing field.. . .

67-10-204. Joint exercise of powers. (2) All powers, privileges, and authority granted to any municipality by this chapter may be exercised and enjoyed jointly with any public agency of this state and jointly with any public agency of any other state or of the United States to the extent that the laws of such other state or of the United States permit such joint exercise or enjoyment.. . .

67-10-205. Joint airport board. (1) Public agencies acting jointly pursuant to 67-10-204 through 67-10-206 shall create a joint board which shall consist of members appointed by the governing body of each participating public agency.. . . The joint board shall have power to plan, acquire, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police any airport or air navigation facility or

> airport hazard to be jointly acquired, controlled, and operated; and such board may exercise on behalf of its constituent public agencies all the powers of each with respect to such airport, air navigation facility, or airport hazard, subject to the limitations of subsection (2) of this section.. . .
>
> (2)(c)  Eminent domain proceedings under 67-10-204 through 67-10-206 may be instituted only by authority of the governing bodies of the constituent public agencies of the joint board. If so authorized, such proceedings shall be instituted in the names of the constituent public agencies jointly, and the property so acquired shall be held by said public agencies as tenants in common until conveyed by them to the joint board.  (Emphasis added.)

By its terms, § 67-10-205(2)(c), MCA, requires joint action when an eminent domain proceeding is brought pursuant to the authority of a joint airport board. However, it does not, on its face, preclude action separate and apart from the joint airport board. Statutes cannot be examined in a vacuum. Rather, statutes affecting the same topic should be read together and, if possible, harmonized so as to give effect to each of them. See, Schuman v. Bestrom (Mont. 1985), 693 P.2d 536, 42 St.Rep. 54.

In the instant case, §§ 67-10-102, -103, -201, and -202, MCA, evidence a legislative intent to empower municipalities to act either jointly or independently. In addition, our state constitution demonstrates an intent to endow cities with a broad grant of power. "The powers of incorporated cities and towns and counties shall be liberally construed." Art. XI, § 4(2), 1972 Mont. Const. Further, when the authority of a city is in question, "every reasonable doubt as to the existence of a local government power or authority [is to] be resolved in favor of the existence of the exercise of that power or authority." Section 7-1-106, MCA.

- 8 -

To limit the statutory scheme to the narrow interpretation suggested by the Lakes would fly in the face of both constitutional and legislative directive. We are not prepared to do so. Neither the joint airport board agreement nor any of the provisions of Title 67, Ch. 10, specifically prohibit the independent exercise of a municipality's power of eminent domain. Rather the power in this case is expressly granted. We must conclude that Ronan acted within its statutory powers to exercise eminent domain.

## DUE PROCESS

The crux of the Lakes' due process argument is that it is unfair to allow Ronan to bring an independent eminent domain proceeding and thereby manipulate the geographical area subject to a public necessity determination. However, although ably argued, the Lakes are unable to cite authority in support of their contention. We conclude that such a failure is not the result of a lack of diligence, but rather reflects the lack of merit of the claim.

The right to due process guarantees that no person shall be deprived of property pursuant to eminent domain proceedings without adequate notice, a hearing and just compensation. See Housing Authority v. Bjork (1940), 109 Mont. 552, 98 P.2d 324. Ronan's compliance with the eminent domain procedures contained within Title 70, Ch. 30, MCA, clearly satisfies those requirements.

## PRELIMINARY INJUNCTION

As the Lakes' claim to entitlement to a preliminary injunction was founded on the alleged statutory and constitutional violations committed by Ronan, the claim is clearly without merit. We therefore limit our discussion to the issue of the quashing of the application for preliminary injunction against Lake County.

The first allegation of error concerns the adequacy of the District Court's order denying the Lakes' application for preliminary injunction and granting Lake County's motion to quash. Specifically, that the District Court failed to make adequate findings of fact and conclusions of law.

Pursuant to Rule 52(a), M.R.Civ.P., orders granting or refusing interlocutory injunctions shall be accompanied by findings of fact and conclusions of law. See Ensley v. Murphy (1983), 202 Mont. 406, 658 P.2d 418. However, the extent of such findings and conclusions is necessarily dependent on the facts and circumstances of each case. Consequently, the litmus test in such cases is whether the District Court's order sets forth its reasoning in a manner sufficient to allow informed appellate review. Accord, Clemans v. Martin (Mont. 1986), 719 P.2d 787, 43 St.Rep. 994.

In the instant case, the District Court found that the Lakes' prayer for relief failed because they retained a plain, speedy, and adequate remedy at law--the Lakes complaint for damages. Although the court failed to state its findings and conclusions in the recommended form, the court's reasoning is nevertheless clear. Under such circumstances, we conclude the Lakes' specification of error is meritless.

In the second and third specifications of error, the Lakes contend that the District Court's order is erroneous because the possible award of damages is not sufficient to remedy Lake County's illegal funding of Ronan's illegal eminent domain proceedings, and that the County's action results in the indirect seizure of the Lakes' land because the land will be held by the joint airport board. We disagree.

As noted above, Ronan is free to pursue independent eminent domain proceedings. Upon the successful completion

of the eminent domain proceedings, and payment of just compensation, title to the property will be vested in Ronan alone. Neither Lake County nor the joint airport board will hold an interest in the property. The Lakes' contention that Lake County is indirectly seizing their land must therefore fail.

In addition, the Lakes have made no showing that the funding of the project is unlawful. Lake County merely acts as custodian of the separate airport funds. When not bound by the procedural constraints of joint action under § 67-10-201, et seq., MCA, Lake County remains free to release funds to Ronan upon lawful request.

The judgment is affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____

_____
Justices

_____
Hon. Frank I. Haswell,
sitting for Chief Justice
J. A. Turnage

- 11 -