No. 02-736

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 372

ALAN and STEPHANIE SHAMMEL, MAURICE and
BETTY MAE SHAMMEL, JACK and IDA RUCKMAN,
BOB and VICKY RUCKMAN, LEWIS and MONA
HARRELL, and DANIEL and LORI HARRELL, individually,

Plaintiffs and Respondents,

v.

CANYON RESOURCES CORPORATION, a Delaware
Corporation, and CR KENDALL CORPORATION,
a Colorado Corporation,

Defendants and Appellants.

APPEAL FROM:     District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV 2001-116,
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Thomas Hattersley III and Alan Joscelyn, Gough, Shanahan, Johnson
& Waterman, Helena, Montana

For Respondents:

A. Clifford Edwards, Roger W. Frickle, and Roberta Anner-Hughes,
Edwards, Frickle, Halverson & Anner-Hughes, Billings, Montana

Submitted on Briefs:  July 10, 2003

Decided:  December 24, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Canyon Resources Corporation and CR Kendall (collectively referred to as Canyon) appeal from the Tenth Judicial District Court's grant of a preliminary injunction and the denial of a motion for an undertaking for security in Fergus County.

¶2      We restate the issues on appeal as follows:

¶3      1. Did the District Court err when it granted the preliminary injunction?

¶4      2. Did the District Court err when it denied Canyon's motion for a written undertaking as provided for under § 27-19-306, MCA?

## Factual and Procedural Background

¶5      From the late 1980s to the mid-1990s, CR Kendall, a Colorado Corporation and a wholly-owned subsidiary of Canyon Resources Corporation, a Delaware Corporation licensed to do business in the State of Montana, mined its property situated in the North Moccasin Mountain Range.  The Respondents in this action, who will be collectively referred to as the Shammels, all own property downstream and downslope from the property that CR Kendall mined.

¶6      In 1996, Alan and Stephanie Shammel were notified that their water was contaminated with nitrates, selenium, thallium, and sulfate.  That same year, Canyon installed a pump-back system on the mine site.[1]  Thereafter, in 1998, Alan and Stephanie began to experience water quantity problems.

---

[1]According to Montana Environmental Information Center (MEIC), the pump-back system Canyon installed at the mine site "intercepts contaminated water in four drainages emanating from the mine, and pumps the water back on to the mine site.  A number of snowmaking machines are then used to spray the contaminated water into the air to evaporate the water and concentrate the pollutants onto the leach pad."

¶7      The Shammels brought a civil action against Canyon on October 10, 2001, alleging theories of trespass, nuisance, and negligence, and seeking compensatory and punitive damages. The Shammels alleged that Canyon had tortiously affected the quantity and quality of water in several drainages–Dog Creek, Little Dog Creek, and the South Fork of Last Chance Creek–resulting in damage to their properties.

¶8      Canyon decided to sell many of its Montana properties and mineral rights at an auction, through the Sheldon Good Auction Company, on August 6, 2002. Canyon advertised the sale in several newspapers in Montana and around the country. The Shammels learned about the auction and filed an application for temporary restraining order and preliminary injunction on July 30, 2002, to restrain Canyon from dissipating the proceeds of the sale of any Montana assets. On August 5, 2002, the District Court granted the TRO and ordered Canyon to deposit any funds received from the auction, up to and including $12,359,141, with the Clerk of the Tenth Judicial District Court. The amount realized from the auction was $616,305. The TRO, as per § 27-19-316, MCA, expired in ten days time and a hearing on the application for preliminary injunction was held on August 14, 2002. The court granted the preliminary injunction but, recognizing that Canyon's harm may outweigh the Shammels', the court set another hearing date for October 1, 2002, to allow Canyon to present any evidence that further addressed the balancing of the equities and to consider Canyon's motion for undertaking for security pursuant to § 27-19-306, MCA.

¶9      After the October 1 hearing, the District Court issued a supplemental order to the preliminary injunction and an order on undertaking. The court found that the scale of

3

equities tipped in the Shammels' favor and so continued the preliminary injunction. In the supplemental order, the court authorized the release of $133,000, which Canyon was contractually obligated to pay. Of the $616,000 sequestered funds, this left a balance of $483,000. The court ordered Canyon to deposit $45,000 from corporate cash on hand with the court to bring the total to $528,000. The $528,000 figure represented, according to the court, the value of Canyon's fee lands that would have been available, but were under contract for sale, to the Shammels were they to prevail at trial.

¶10 The court also denied Canyon's motion for undertaking for security because Canyon had nearly $1 million in cash on hand to use for payroll purposes, and because the court deemed it to be in the "interests of justice." Canyon now appeals the order granting the Shammels' application for preliminary injunction and the court's subsequent denial of the motion for an undertaking for security.

### Standard of Review

¶11 It has come to our attention that there is confusion in our case law regarding the standard of review where an injunction has been granted or denied. The standard first used was an abuse of discretion standard. *Nelson v. O'Neal* (1871), 1 Mont. 284, 187 Mont. LEXIS 4. "The granting or refusing an injunction was discretionary with the court below . . . it was [not] an abuse of discretion in refusing an injunction." *Nelson*, 1 Mont. at 286. Later, a manifest abuse of discretion standard was introduced. *Craver v. Stapp* (1902), 26 Mont. 314, 67 P. 937. "The granting or dissolving of an injunction is so largely within the discretion of the lower court, that the supreme court will never disturb its action, unless there

4

has been a manifest abuse of discretion." *Craver*, 26 Mont. at 314, 67 P. at 937. These two different standards have been used interchangeably over the last hundred years. *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12; *M.H. v. Montana High School Ass'n* (1996), 280 Mont. 123, 130, 929 P.2d 239, 243; *Mont. Tavern Ass'n v. State, Dept. of Revenue* (1986), 224 Mont. 258, 263, 729 P.2d 1310, 1314; *Madison Fork Ranch v. L & B Lodge, Etc.* (1980), 189 Mont. 292, 302, 615 P.2d 900, 906; *Hansen v. Galiger* (1949), 123 Mont. 101, 113, 208 P.2d 1049, 1056; *Colusa Parrot Mining & Smelting Company v. Barnard* (1903), 28 Mont. 11, 15, 72 P. 45, 45; *Anaconda Copper-Min. Co. v. Butte Min. Co.* (1896), 17 Mont. 519, 521, 43 P. 924, 925.

¶12     It is incumbent upon us to rectify this century-old confusion and provide consistency to the law and guidance to the bar by adopting one standard of review. Unfortunately, none of our prior decisions discuss the difference between the two standards nor state a reason for adopting one over the other. In light of the high degree of discretion vested in district courts to maintain the status quo through injunctive relief, we determine that the more deferential "manifest abuse of discretion" is the appropriate standard for reviewing the granting of a preliminary or permanent injunction. A "manifest" abuse of discretion is one that is obvious, evident or unmistakable. Black's Law Dictionary, 6th Ed. To the extent that the cases listed below are inconsistent with this holding, they are overruled.[2]

---

[2]*Nelson,* 1 Mont. 284, 187 Mont. LEXIS 4; *Anaconda Copper-Min. Co.,* 17 Mont. 591, 43 P. 924; *Rea Bros. Sheep Co. v. Rudi* (1912), 46 Mont. 149, 127 P. 85; *Stalcup v. Cameron Ditch Company* (1956), 130 Mont. 294, 300 P.2d 511; *Boyer v. Karagacin* (1978), 178 Mont. 26, 582 P.2d 1173; *Madison Fork Ranch,* 189 Mont. 292, 615 P.2d 900; *Sampson v. Grooms* (1988), 230 Mont. 190, 748 P.2d 960; *Butler v. Germann*

**Issue 1**

¶13    *Did the District Court err when it granted the preliminary injunction?*

¶14    Canyon argues that the preliminary injunction should not have been granted for several reasons.   The first, and most relevant for purposes of this opinion, is that the Shammels failed to  meet the requirements under the *Van Loan* test.  *Van Loan v. Van Loan* (1995), 271 Mont. 176, 181-82, 895 P.2d 614, 617.   Second, the District Court did not set forth its reasoning for issuing the injunction with sufficient clarity to allow informed appellate review.  Third, the lower court's sequestration of Canyon's assets is an improper prejudgment attachment.  Fourth, the District Court took judicial notice of numerous pages of newspaper articles, editorials, letters, and excerpts from an MEIC report without first granting Canyon a hearing under Rule 201(e), M.R.Evid.

¶15    Section 27-19-201, MCA, provides for issuance of a preliminary injunction

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

---

(1991), 251 Mont. 107, 822 P.2d 1067; *Curran v. Dept. of Highways* (1993), 258 Mont. 105, 852 P.2d 544; *Gabriel v. Wood* (1993), 261 Mont. 170, 862 P.2d 42; *Sebena v. State* (1994), 267 Mont. 359, 883 P.2d 1263; *Ducham v. Tuma* (1994), 265 Mont. 436, 877 P.2d 1002; *Jarrett v. Valley Park, Inc.* (1996), 277 Mont. 333, 922 P.2d 485; *In re Marriage of Snow*, 1998 MT 146N; *Engel v. Gampp*, 2000 MT 17, 298 Mont. 116, 993 P.2d 701; *Tungsten Holdings, Inc. v. Kimberlin*, 2000 MT 24, 298 Mont. 176, 994 P.2d 1114; *Bell v. Ygnatowiz*, 2000 MT 284N*; Wells v. Young*, 2002 MT 102, 309 Mont. 419, 47 P.3d 809; *Hagener,* 2002 MT 109, 309 Mont. 473, 47 P.3d 847.  To the extent that any other cases, not included here, cite the same standard, they are also overruled.

(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;

(3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;

(4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;

(5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15.

This Court has held that only one of these subsections need be met for an injunction to be issued. *Sweet Grass Farms v. Board of County Com'rs,* 2000 MT 147, ¶ 27, 300 Mont. 66, ¶ 27, 2 P.3d 825, ¶ 27 (citing *Stark v. Borner* (1987), 226 Mont. 356, 359-60, 735 P.2d 314, 317).

¶16    Here, subsections two and three apply.  In his affidavit, Richard De Voto (De Voto), President of Canyon Resources Corporation, stated that,

[h]alf the proceeds from the August 6th sale of assets of Canyon and its subsidiaries will go to their lenders, pursuant to prior agreements, and the remainder will be utilized to meet and fulfill the ongoing expenses and obligations of Canyon and its subsidiaries, including the funding of continued reclamation obligations at the Kendall mine site.

Accordingly, there is a very real possibility that, should the Shammels prevail at trial, they will have no recourse against Canyon.  This would render a judgment in the Shammels' favor ineffectual and produce a great or irreparable injury to them.

¶17 This case, however, presents an additional obstacle. Generally, injunctive relief is not granted where an action for monetary damages will afford an adequate remedy. *Boyer,* 178 Mont. at 31, 582 P.2d at 1177 (citing *State v. Krieg* (1965), 145 Mont. 521, 402 P.2d 405). In *Van Loan*, this Court adopted a four-part test to determine "whether a preliminary injunction should issue when a party's monetary judgment may be made ineffectual by the actions of the adverse party thereby irreparably injuring the applicant. The moving party has the burden of proving these elements." The test is:

> (1) the likelihood that the movant will succeed on the merits of the action;
>
> (2) the likelihood that the movant will suffer irreparable injury absent the issuance of a preliminary injunction;
>
> (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party (a balancing of the equities); and
>
> (4) the injunction, if issued, would not be adverse to the public interest.

*Van Loan*, 271 Mont. at 182, 895 P.2d at 617. It is this test, Canyon contends, that the Shammels have failed to meet.

¶18 Canyon argues the first element was not met because the court relied heavily on the testimony of a lay witness, Stephanie Shammel (Stephanie), when the Shammels' two expert witnesses contradicted each other and raised real doubt as to the Shammels' likelihood of succeeding on the merits.

¶19 "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule

704, M.R.Evid. According to the commission's comments regarding this rule, it is identical to the Federal Rules of Evidence and is consistent with Montana law. Advisory committee notes to the Federal rule indicate that the "'basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact.' The language of the rule allows lay witnesses to give their opinions on an ultimate issue if the requirements of Rule 701 are met." The Federal Rules and Montana Rules of Evidence, 701, indicate that

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

¶20 The District Court found Stephanie's testimony "persuasive" as to the resolution of a fact in issue. The lower court decided to hear from Stephanie regarding the harm the plaintiffs were suffering because of the "bright-line dispute between the experts" regarding water quality and quantity. Stephanie's testimony was based on her rationally based perception. She testified that beginning in 1988, she and her husband were involved in the mine permitting process. The couple had water samples taken over the years and were notified in 1996 that their water was contaminated with nitrates, selenium, thallium, and elevations of sulfate. Stephanie further testified that water quantity had been significantly reduced after the pump-back system was installed in 1996. The District Court did not err in relying on Stephanie's testimony.

¶21 Regarding the second element, Canyon points to the District Court's findings that Canyon had been able to pay off nearly $32 million in loans in a six-year period, its

stockholder equity as of June 30, 2002, exceeded $33 million, and it had $990,000 cash on hand as of October 1, 2002. Having determined that it is not in a financially precarious position, Canyon contends it was inconsistent for the court to conclude that Canyon would not be able to satisfy a judgment should the Shammels prevail at trial.

¶22 As noted above, De Voto asserted in his affidavit that sequestering the funds would hamper current reclamation efforts; that half of the proceeds from the auction were to go to Canyon's lenders; and that the other half of the proceeds would be used to meet operating costs and obligations to various subsidiaries, including funding of continued reclamation obligations. While Canyon correctly points out the District Court's findings with respect to Canyon's financial position, the affidavits presented at the hearing do bring to light the distinct likelihood that Canyon may not have money to satisfy a future judgment. As the District Court pointed out, Canyon's money appears to be obligated everywhere except Montana. If this money is allowed to leave Montana and go to creditors and subsidiaries, there is a likelihood that there will be no recourse for the Shammels should they prevail at trial.

¶23 As to the third element, Canyon argues that the District Court did not articulate any basis or identify evidence that would show that the threatened injury to the Shammels outweighed the damage the proposed injunction would cause Canyon. Canyon attempted to bolster this argument by pointing out that the only evidence the court referenced in its August order was the evidence Canyon offered to establish that an injunction would cause it greater harm than the Shammels.

10

¶24 After the initial hearing for the preliminary injunction where the District Court found that the damage to the Shammels would be greater than Canyon's, the District Court conducted an *additional* hearing to allow Canyon a further opportunity to present evidence regarding the balancing of the equities. The District Court found the evidence presented by Canyon as to the financial damage caused by the preliminary injunction to be "wholly unconvincing." The court noted Canyon's ability to pay not only the Sheldon Good Auction Company bill in the summer of 2002, but also its ability to repay nearly $32 million in loans in a six-year period, and the $1.3 million Canyon made from a land sale in Argentina. Based on these figures the court reasoned that Canyon's resting the company's financial future on the $616,000 in auction proceeds was misplaced. We conclude that the District Court did not err in finding that the Shammels would suffer greater injury if the injunction were not issued. The record reflects that Canyon appears to have sufficient funding without the $616,000 to carry on its operations. On the other hand, if the court had not sequestered the $616,000, the Shammels would very likely be without recourse should they be successful at trial.

¶25 Concerning the fourth element, Canyon contends that the injunction would be against the public interest because sequestering funds from the auction jeopardized Canyon's ability to continue reclamation activities and maintain the public's interest in a clean healthful environment.

¶26 The District Court concluded that because Montanans have a fundamental right to a clean and healthful environment, it is in the public interest to ensure that funds are available

11

for potential clean up of contaminants on the Shammels' private property. Art. II, Sec. 3, Mont. Const. Assuming, as the District Court did, for purposes of issuing an injunction, that there is pollution on the Shammels' property, and given the pervasive nature of water pollution, the court did not err in concluding that, under Art. II, Sec. 3, it is in the public's interest as well as the Shammels' interest to assure that funds are available for potential clean up of any such pollution.

¶27    We hold that the *Van Loan* test was met, and that the District Court did not manifestly abuse its discretion when it granted the preliminary injunction.

¶28    Canyon next argues that the District Court erred in granting the preliminary injunction because the District Court failed to set forth its reasoning for issuing the injunction with sufficient clarity to allow informed appellate review. Canyon correctly points out that Rule 52(a), M.R.Civ.P., requires that a court must set forth the findings of fact *and* conclusions of law which constitute the grounds of its action in granting or refusing interlocutory injunctions. However, we have held that "the extent of such findings and conclusions is necessarily dependent on the facts and circumstances of each case . . . the litmus test in such cases is whether the District Court's order sets forth its reasoning in a manner sufficient to allow informed appellate review." *Lake v. Lake County* (1988), 233 Mont. 126, 134, 759 P.2d 161, 165 (citing *Clemans v. Martin* (1986), 221 Mont. 483, 487, 719 P.2d 787, 789-90. We determine, based on the above discussion,  that the District Court set forth its reasoning in this case in a manner sufficient to allow informed appellate review.

12

¶29 Canyon also contends that because the instant case does not satisfy *Van Loan*, the only other grounds upon which the District Court might have properly ordered the sequestration of Canyon's assets was under Montana's prejudgment attachment statutes, which are not applicable in this situation. Because we hold that the *Van Loan* requirements were met, there is no need to address this issue.

¶30 Last, Canyon argues that the preliminary injunction should not have been granted because the District Court improperly took judicial notice of numerous pages of newspaper articles, editorials, letters, and excerpts from an MEIC report and denied Canyon's request for a hearing pursuant to Rule 201(e), M.R.Evid. While Canyon again correctly quotes the law, and while judicial notice of the documents, assuming they were judicially noticed, may have been inappropriate without offering Canyon an opportunity to be heard, Rule 201(2)(e),[3] the tenor of the articles had to do with whether Canyon was unreasonable in resisting an increase in the reclamation bond. The issue here, however, was the sequestration of sale proceeds, not the size of the reclamation bond. Assuming arguendo, that the District Curt erred in taking judicial notice, the error was harmless.

¶31 Accordingly, we affirm the District Court's decision to grant the preliminary injunction.

---

[3]Rule 201(b), M.R.Evid., states that "[a] fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."

**Issue 2**

¶32    *Did the District Court err when it denied Canyon's motion for a written undertaking as provided for under § 27-19-306, MCA?*

¶33    Canyon contends that the court improperly denied the motion for undertaking because, even though Canyon is no longer mining, its reclamation activities constitute "construction" under § 27-19-306(2)(b), MCA.

¶34    Section 27-19-306, MCA, requires that "[i]f a party seeks an injunction or restraining order against an industrial operation or activity, the judge shall require a written undertaking to be filed by the applicant."

¶35    The District Court denied Canyon's request for undertaking interpreting the statute as follows:

> The legislature's intent was those injunctions which stopped an activity of mining, of timber, or other activity, as defined, grazing operation, as defined in that statute, that that was their goal, that if these things are stopped in process by an injunction you get this undertaking to cover the wages of those poor folks who get stopped who can't earn a living when the injunction is granted, that they were dealing with very precise injunctions that were aimed against timber and mining that were ongoing active enterprises with employed people who will be stopped because of [the] injunction.
>
>      This is not the instance here.  We are not stopping an ongoing operation.  We are requiring the company to retain Montana assets for the eventual outcome of this case . . . .

¶36    Canyon contends that the mandatory language in § 27-19-306(2)(a), MCA, is applicable in the instant case.  "[T]he judge *shall* require a written undertaking to be filed by the applicant."  (Emphasis added.)  This requirement, however, must be read in the context of the entire subsection, which reads as follows:

14

> The amount of the written undertaking must be set in an amount that includes all of the wages, salaries, and benefits of the employees of the party enjoined or restrained during the anticipated time that the injunction or restraining order will be in effect. The amount of the written undertaking may not exceed $50,000 unless the interests of justice require. The written undertaking must be conditioned to indemnify the employees of the party enjoined or restrained against lost wages, salaries, and benefits sustained by reason of the injunction or restraining order.

Section 27-19-306(2)(a), MCA. The expressed purpose of the undertaking is to protect the employees of the party enjoined from loss of wages, salaries, and benefits during the period that operations are enjoined. The subsection has no application to the present case. The injunction at issue does not restrain Canyon from engaging in an industrial operation or activity. Rather, it requires sequestration of sale proceeds.

¶37 Beyond that, the District Court has discretion whether an undertaking may be waived. Section 27-19-306(1)(b), MCA. The District Court acted within that discretion in denying the request for an undertaking, "in the interest of justice." Section 27-19-306(1)(b)(ii), MCA.

¶38 We affirm the District Court's denial of Canyon's motion for written undertaking.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ DOROTHY McCARTER
Honorable Dorothy McCarter, District
Judge, sitting in place of Justice John Warner

15

Justice Jim Rice dissenting.

¶39　I dissent.  I would conclude that the issuance of the injunction herein by the District Court did not meet the *Van Loan* test, which, in my view, has not been fully set forth and applied by the Court, and would reverse.

¶40　In devising the *Van Loan* requirements, this Court took direction from the United States Supreme Court's decision in *Deckert v. Independence Shares Corp.* (1940), 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189, and the Ninth Circuit's decision in *In re Estate of Ferdinand Marcos, Human Rights Litigation* (9th Cir. 1994), 25 F.3d 1467.  *Van Loan*, 271 Mont. at 179-80. 895 P.2d at 615-16.  We noted in our analysis of those cases that the injunctive relief granted therein was premised upon the defendant's insolvency, the defendant's history of secreting assets, or its present threat to do so.  *Van Loan*, 271 Mont. at 179-80, 895 P.2d at 615-16.  We declared that injunctive relief in a tort case was only available in the "extraordinary" case, defined by the Ninth Circuit as when "money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment."  *Van Loan*, 271 Mont. at 179-80, 895 P.2d at 616 (quoting *Estate of Marcos,* 25 F.3d at 1469).

¶41　We adopted our own test based upon these principles, holding that injunctive relief was appropriate "if it is alleged that the defendant threatens to, or is about to secret or dissipate his/her assets in order to thwart any monetary recovery by the plaintiff . . . ."  *Van Loan*, 271 Mont. at 184, 895 P.2d at 619.  We "caution[ed] that our analysis is to be narrowly interpreted" and stressed that relief is to be granted "only under the most clear facts

17

that fully satisfy the four-part test." *Van Loan*, 271 Mont. at 183, 895 P.2d at 618. The Court decides this case today without referencing these principles or requiring that they be satisfied.

¶42    Unlike the plaintiff in *Van Loan*, the Plaintiffs here have not established the required elements with the required proof. In *Van Loan*, the defendant had "admitted liability and stated that significant damages [had] occurred." *Van Loan*, 271 Mont. at 183, 895 P.2d at 618. Here, the Plaintiffs' own experts disagreed about the Defendants' potential liability. In *Van Loan*, the defendant "[had] threatened that he will move his assets out of [plaintiff's] reach." *Van Loan*, 271 Mont. at 182, 895 P.2d at 617. Here, the District Court made no findings whatsoever about a threat or history of asset dissipation by the Defendants in order to thwart recovery. Although the clarity of proof presented in *Van Loan* may well be rare, the District Court issued relief here on wholly inadequate grounds–because it was "gravely concerned that the Defendants are operating a variety of subsidiaries with subsidiaries." Speculation or surmise is not proof. "Grave concern" about a company's business structure does not establish a pending insolvency, a threat or plan to dissipate assets, or an intention to thwart a monetary recovery, as required by *Van Loan*, and does not qualify as "clear facts that fully satisfy" the standards for the narrow, emergent relief we created in that case.

¶43    In ¶ 16, this Court references the Defendants' proposed expenditure of the sale proceeds, and from there makes the unsupported leap that "[a]ccordingly, there is a very real possibility that, should the Shammels prevail at trial, they will have no recourse . . . ." However, the distribution of $600,000 in sale proceeds by a $33 million company hardly

18

constitutes proof that a plaintiff will be left with "no recourse." Neither is it correct to state that "[i]f this money is allowed to leave Montana . . . there will be no recourse" (¶ 22). The arm of the law reaches beyond our state's borders. *Van Loan* requires "clear facts" of a company's pending insolvency or its intent to avoid a judgment. Neither were demonstrated here.

¶44    Because of the failure to prove the requisite elements of the relief requested, I dissent.


/S/ JIM RICE


Chief Justice Karla M. Gray joins in the dissent of Justice Rice.


/S/ KARLA M. GRAY