No. 03-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 292

K.D.R.-M,

　　　　　Petitioner and Appellant,

　　　v.

R.E.M.,

　　　　　Respondent and Respondent.

APPEAL FROM:　　District Court of the Fifteenth Judicial District,
　　　　　　　　In and for the County of Roosevelt, Cause Nos. DR 2001-19 & DR 2002-28
　　　　　　　　The Honorable David J. Cybulski, Judge presiding.

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　　Carol C. Johns, Attorney at Law, Wolf Point, Montana

　　　　　For Respondent:

　　　　　　　Mary Zemyan, Attorney at Law, Wolf Point, Montana

　　　　　　　　　　　　Submitted on Briefs:　July 7, 2004

　　　　　　　　　　　　　　　Decided:　October 21, 2004

Filed:

_____
　　　　　　　　　　　Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 K.D.R.-M. (the mother) appeals the judgment of the Fifteenth Judicial District Court, Roosevelt County, dismissing her temporary orders of protection against R.E.M. (the father).

¶2 We reverse and remand for proceedings consistent with this Opinion.

¶3 We address the following issue on appeal: Did the District Court err in dismissing the mother's temporary orders of protection without first holding an evidentiary hearing?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The mother and the father separated in 2000. The mother remained in Montana with their child, G.M., while the father moved to Virginia. The father filed for dissolution and custody in the Circuit Court of Virginia. The mother now has primary physical custody of G.M., while the father has visitation rights.

¶5 After visiting her father, G.M. stated that her father choked her, and demonstrated as much. A criminal complaint was filed and the father subsequently entered into a deferred prosecution agreement, which allowed for supervised visitation.

¶6 Because of her past experiences and her continuing fears for G.M.'s safety, the mother petitioned for and was granted an *ex parte* temporary order of protection on October 2, 2001. Hearing on this temporary order was set, but it was continued several times for various reasons. During the interim, the father visited G.M., after which G.M. described incidents of physical and sexual abuse. Thereafter, the Montana Department of Public

Health and Human Services, Child and Family Services Division (CFS) investigated the matter, and a temporary investigative authority (TIA) was granted on March 22, 2002.

¶7 On June 12, 2002, Judge Cybulski found that G.M. was a youth in need of care and that she was a child in danger of abuse. The State of Montana moved to dismiss the TIA, a motion which was granted on August 7, 2002.

¶8 Subsequently, the Circuit Court of Virginia issued its final decree of divorce on August 29, 2002, which granted the father unrestricted and unsupervised visitation of G.M. Again, after visiting her father in September 2002, G.M. described incidents of abuse.

¶9 The mother again petitioned for an order of protection, which was granted by Judge McKeon on September 30, 2002. Judge Cybulski could not be reached. Judge McKeon found that G.M. was in danger of harm, and he ordered that Dr. Kay Dorr (Dr. Dorr) supervise the father's interactions with G.M. He also ordered that, should Dr. Dorr or the Montana Department of Public Health and Human Services, Family Services Division (DFS) determine that supervised visitations were no longer necessary, either party could petition for an immediate lifting of the temporary order of protection. Thereafter, Dr. Dorr strongly recommended that "prior to any further involvement" with G.M., the father should receive a sexual offender evaluation by Dr. Marla North (Dr. North), in accordance with Montana Sex Offender Treatment Association (MSOTA) guidelines, as "[s]uch an evaluation is a basic and essential requirement in any situation wherein there are allegations of child sexual abuse."

3

¶10 Ultimately, the father did not obtain an evaluation from Dr. North. Rather, he obtained an evaluation from Dr. Peter O. Powell (Dr. Powell) of Virginia--a doctor who was not MSOTA certified.

¶11 On March 17, 2003, the father was ordered, upon motion by the mother, to submit to a full evaluation by Dr. North. On May 27, 2003, the father filed a motion to vacate all portions of the temporary orders of protection that pertained to G.M. This motion was based on an affidavit from a CFS social worker who stated, based on (1) her observation, (2) an October 8, 2002 forensic physical exam which was normal, and (3) Dr. Powell's evaluation, that the allegations of abuse were unsubstantiated.

¶12 The mother opposed the father's motion regarding the temporary orders of protection. On June 12, 2003, Judge Cybulski denied the father's motion to vacate and ordered that it would be reconsidered only after the father complied with the sexual offender evaluation by Dr. North.

¶13 On June 16, 2003, the father filed another motion to vacate. The matter was heard on July 8, 2003, at which time Judge Cybulski found the following:

> I'm going to just dismiss this whole matter right now. It's over. There's no need for the order of protection. The danger appears to have been gone if there ever was one, and no one's ever showed there really was one. The need to have him [the father] evaluated almost comes down to a fishing expedition looking for a danger. So, this thing is over. Dismissed. That's it.

¶14 The mother now appeals the District Court's judgment to dismiss her temporary orders of protection.

## STANDARD OF REVIEW

¶15    We review a district court's grant or denial of injunctive relief to determine whether there has been a manifest abuse of discretion. *Shammel v. Canyon Res. Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. A "manifest" abuse of discretion is one that is obvious, evident, or unmistakable. *Shammel*, ¶ 12.

## DISCUSSION

¶16    **Did the District Court err in dismissing the mother's temporary orders of protection without first holding an evidentiary hearing?**

¶17    The mother argues that the District Court abused its discretion in dismissing the temporary orders of protection without first holding an evidentiary hearing because: (1) both Judge Cybulski and Judge McKeon independently found good cause to protect G.M.; (2) Judge McKeon intended for an evidentiary hearing to occur in his order which stated that a "hearing be held on petitioner's [the mother] request and this Temporary Order of Protection to determine whether or not it should be extended or made permanent at 11:00 a.m. on October 8, 2002"; and (3) experienced psychologists expressed concerns for the safety of G.M. In addition, the mother argues that she was denied her day in court, given that Judge Cybulski both afforded the social worker absolute authority and confused the meaning of "unsubstantiated" with that of "unfounded." Further, the mother argues that § 40-15-202(1), MCA, explicitly requires an evidentiary hearing regarding temporary orders of protection.

¶18    The father argues that Judge Cybulski acted in conformity with "longstanding Montana caselaw" regarding the fact that temporary orders of protection are specialized forms of injunctions. As such, the father contends that Judge Cybulski was correct in finding

5

that "eligibility for a TOP had not been shown. . . ." In addition, the father argues that because the District Court found that the mother had not met the "threshold requirement for any TOP," it necessarily follows that the mother was not entitled to an evidentiary hearing. Further, the father argues that the mother has had many days in court, both in Montana and Virginia, and she has not been persuasive in substantiating her claims of abuse in these courts.

¶19 A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Shammel*, ¶ 12. Here, the District Court found, in pertinent part, that:

> 2. The first petition with this court alleged danger to the petitioner [the mother] and her children [G.M.]. The second petition alleged specific danger to the parties' child.
>
> 3. Both petitions filed with this Court request orders of protection, which require a showing of some danger or harm. They appear to have evolved into a separate custody/visitation fight between the parties.
>
> 4. The temporary protection order entered on September 30, 2002 limited respondent's [the father] visitation with the minor child while CFS conducted its investigation. CFS made its determination that the allegations were unsubstantiated and that there was no danger to the child. CFS requested that the Court remove the limitations on visitation.
>
> 5. An order for evaluation was previously issued based on Dr. Kay Dorr's recommendation but that order is moot at this point. The danger to the child appears to be gone, if there ever was any. The request for evaluation at this time appears to be a fishing expedition looking for a danger.

¶20 Here, during the hearing on the father's first motion to vacate the temporary orders of protection, Judge Cybulski declined to reach the merits of the father's motion without the father first receiving an evaluation from Dr. North. The father did not, however, receive this evaluation from Dr. North. Instead, the District Court, upon the father's second motion to

6

vacate the temporary orders of protection dismissed the mother's case--without having received any additional information and without the father complying with the District Court's first order--stating that "[t]he danger to the child appear[ed] to be gone, if there ever was any."

¶21 Judge Cybulski twice ordered the father to obtain a mental health evaluation and a sexual offender evaluation by an MSOTA certified doctor. These requirements were found to be necessary to protect G.M. given her allegations of physical and sexual abuse. The father simply refused to comply with the District Court's orders. The reward for his intransigence was summary dismissal of the mother's temporary orders of protection without any hearing or demonstration that the temporary orders of protection had been improperly granted in the first place.

¶22 When the father first moved to vacate the temporary orders of protection, the District Court denied the motion because the MSOTA sexual offender evaluation had not been completed. The second time the father filed his motion to vacate, the District Court granted the motion without any additional information. This summary reversal of field has no basis in the record.

¶23 We hold that dismissal of the mother's case was a manifest abuse of the District Court's discretion under the circumstances of this case--i.e., where the mother was not afforded an evidentiary hearing on the father's motion to vacate the orders of protection; and where the father's failure to comply with the twice-ordered evaluations may have precluded the ability to establish the facts relating to the alleged abuse of G.M. by her father.

7

Therefore, we reverse the District Court's dismissal of the mother's case. We remand this case to the District Court for a hearing on the merits of the father's motion to vacate the temporary orders of protection.

¶24     Reversed and Remanded for proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE

Justice John Warner concurring.

¶25 I agree with the result reached by the Court, but disagree with its reasoning. The Court mistakenly applies the manifest abuse of discretion standard for review of injunctive relief. The manifest abuse of discretion standard for review of a grant or denial of injunctive relief is well thought out and carefully crafted. However, in my view, the Court's holding in this case should be based on a failure to follow the applicable statute, rather than on a manifest abuse of discretion.

¶26 The beginning of this controversy, as far as it involves the orders of protection, is the mother's *ex parte* applications for protective orders. By the very nature of these orders, the information presented to the Court, including information concerning the alleged abuse of the child, all came from the mother. The father did not have any opportunity to present his side of the story. It was based on such *ex parte* information that the District Court found probable cause to issue the protective orders. At this point is where the District Court exercised its discretion.

¶27 Then, still with no input from the father, the various counselors recommended mental health and sexual offender evaluations. When the father had his opportunity to contest the mother's allegations, he offered substantial information and opinions that the mother was wrong, that he presented no danger to the child, that he could not afford to come to Montana for an evaluation, and raised a real suspicion that the mother alleged he sexually abused the child only to keep him from exercising his visitation rights.

¶28 The father moved the District Court to vacate its orders of protection. This motion was summarily denied pending completion of the evaluations previously ordered, without

9

considering the information presented to support it. The father again moved to vacate the orders of protection, arguing that the evaluations were unnecessary, that they would violate his right to privacy, and that he had no ability to pay for evaluations done in Montana when he lived on the East coast. This motion was deemed sufficient to set the matter for hearing.

¶29 On July 8, 2003, the mother, her attorney and the father's attorney appeared before the District Court in Wolf Point. The mother testified in opposition to the father's affidavit that he could not afford to come to Montana for evaluations. Then, without considering the further evidence the mother was prepared to present in support of the orders of protection, and over her objection, both protective orders were vacated and the actions dismissed. The formal written order of dismissal was filed July 18, 2003.

¶30 The District Court's error is not that it manifestly abused its discretion in dismissing the protective orders. The error is in vacating the orders and dismissing the entire action without holding a hearing on whether the protective orders should be continued, amended or dismissed.

¶31 The mother commenced both of these actions specifically alleging she was entitled to a temporary protective order under § 40-15-201, MCA, as well as under § 40-4-121, MCA.

Section 40-15-202(1), MCA, provides:

(1) A hearing must be conducted within 20 days from the date that the court issues a temporary order of protection. The hearing date may be continued at the request of either party for good cause or by the court. If the hearing date is continued, the temporary order of protection must remain in effect until the court conducts a hearing. At the hearing, the court shall determine whether good cause exists for the temporary order of protection to be continued, amended, or made permanent.

¶32 Once the mother presented enough information under oath to move the District Court's discretion to issue the temporary order, the statute clearly requires that a hearing be held where the trial court is to take evidence before making a decision whether such order should be dismissed, continued, amended or made permanent. The District Court did not manifestly abuse its discretion by deciding the mother's allegations were groundless and dismissing its former orders. It had no discretion to make that decision without holding a hearing. As said above, not holding the hearing to determine what the facts really are, as required by statute, is the error.

¶33 The Court's decision today is troubling because in order to conclude the District Court manifestly abused its discretion, it necessarily makes a qualitative determination the mother's hearsay information is more persuasive than the hearsay information presented by the father.

¶34 I concur that the case must be remanded, but I make no comment on the evidence.

/S/ JOHN WARNER