No.  91-072

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

---

OWEN D. BUTLER and ERNA D. BUTLER,

Plaintiffs and Respondents,

-vs-

JOHN V. GERMANN and BARBARA A. GERMANN,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David L. Pengelly; Knight, Maclay & Masar, Missoula,
Montana

For Respondent:

Jeffrey H. Langton, Hamilton, Montana

---

FILED

Filed:  DEC 12 1991

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  June 28, 1991

Decided:  December 12, 1991

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Owen and Erna Butler sought an injunction requiring John and Barbara Germann to repair damage to an irrigation ditch that runs through the Germanns' property before delivering water to the Butler's property. The District Court for the Fourth Judicial District in Ravalli County issued a preliminary injunction, and after a hearing, issued a permanent injunction, together with an award of damages, costs, and attorney's fees. The Germanns appeal. We affirm.

The issues are:

1. Did the District Court err in ordering the Germanns to repair the ditch?

2. Did the District Court err in permanently enjoining the Germanns from obstructing, encroaching upon, disturbing, or otherwise impairing the Butlers' ditch easement?

3. Did the District Court err in awarding the Butlers $2000 as damages?

4. Did the District Court err in awarding the Butlers attorney's fees and costs incurred subsequent to the preliminary injunction?

The Butlers and the Germanns own adjacent tracts of land in Ravalli County. Both have appurtenant water rights. The Waddell Ditch, which flows northward through the Germanns' property onto the Butlers' property, supplies the water rights of both parties.

The Butlers have historically irrigated their property by temporarily damming the Waddell Ditch. This caused water to back

2

up in the ditch and then overflow the downslope bank of the ditch, irrigating their land in a sheet or flood. Topographical factors make this the most efficient means of irrigating the land in question.

The Germanns moved onto their property in March 1988. Without consulting the Butlers, John Germann attempted to change the course and flow rate of the ditch on his property by digging it deeper and cleaning out sediment. He also bladed off from 12 to 18 inches of the downslope bank and used the dirt as fill in his barnyard.

On June 28, 1989, the Butlers filed a complaint and requested a preliminary injunction to restrain the Germanns from interfering with the ditch. The Butlers alleged that the Germanns' modification of the ditch had reduced the water level in the ditch so far that the Butlers could no longer use it for sheet irrigation. They also claimed damages for a hay crop lost because of insufficient irrigation. The Germanns counterclaimed for damages allegedly due to flooding from the direction of the Butlers' property.

After a hearing on June 28, 1989, the District Court granted a preliminary injunction ordering the Germanns to raise the banks of the ditch to allow sheet irrigation of the Butler property. The court appointed Fourth Judicial District Water Commissioner Thomas Gale as special master to monitor the Germanns' repairs to the ditch.

Gale was satisfied with the adequacy of the Germanns' repair efforts. The Butlers, however, were not. At the permanent

3

injunction hearing, they presented expert testimony that although the repairs had restored the flow in the Waddell Ditch to the Butler property, the repaired ditch banks were leaky and unstable.

The District Court entered judgment for the Butlers. It ordered the Germanns to raise the ditch banks to a uniform height throughout their property and then line the repaired ditch with bentonite. The court also permanently enjoined the Germanns from further interference with the ditch, awarded $2000 in damages to the Butlers, and denied the Germanns' counterclaim. The court then directed the Germanns to pay the Butlers' costs and attorney's fees.

I

Did the District Court err in ordering the Germanns to repair the ditch?

The fundamental purpose of any remedy is to return the plaintiff to his or her rightful position, "the position or state the party would have attained had the [wrong] not occurred." *See generally Billings Clinic v. Peat Marwick Main & Co.* (1990), 244 Mont. 324, 345, 797 P.2d 899, 913. The Germanns rely on this principle in accusing the District Court of "overkill." They suggest that the District Court was without power to require them to do more than restore the banks of the ditch to their former height, and they conclude that the District Court's judgment will compel them to provide the Butlers with a much better ditch than they had before.

4

We disagree. The mere restoration of the height of the ditch banks to their former level did not restore the ditch to its former integrity. That much was clear from all the evidence that was offered.

John Germann testified that in May 1990, after he partially restored the lower ditch banks in compliance with the District Court's preliminary injunction, the downslope bank of the ditch washed out close to the Butlers' fence. He admitted that he had not sufficiently compacted the material with which he restored the bank and that this caused the washout. He also admitted that there was potential for further washouts throughout his property for the same reason.

Stanton Cooper, the general manager of the Butler property, testified that he was not satisfied with the Germanns' partial repairs. He watched John Germann pile dirt back onto the downslope bank of the ditch. He testified that Germann used only a very thin layer of dirt and that water continued to seep through it, and that the seepage would continue unless the Germanns sealed the ditch.

It was his personal opinion that at the time of trial the partially repaired banks were insufficiently stable to hold the significant surges of natural runoff which could be expected to flow through the ditch during certain seasons of the year. He testified that the banks, as they existed at the time of trial, would soften, allow further seepage, and eventually wash out. Specifically, he did not believe that in the long run the partially repaired banks were stable enough to hold water in the fashion that

5

was necessary for the Butlers to continue their historical practice of sheet irrigation.

Darwin Titeca, the Butlers' lessee, agreed that the Germanns' repairs were inadequate. He was familiar with the Waddell Ditch as it existed on the Germann property before the Germanns disturbed it in 1989. He testified that the partially repaired lower banks of the ditch were 12 to 15 inches lower than they had been before the Germanns interfered with them. He was concerned that without a court order requiring the Germanns to elevate the banks further they could wash out. He believed that if the Germanns did not immediately restore the banks the Butlers' hay crop would burn up again like it did in 1989. He explained that in 1989 after Germann disturbed the lower bank of the ditch the Butler property did not receive sufficient water because it was all washing out over the destroyed lower bank on the Germann property.

Barry Dutton, a soil scientist and irrigation specialist retained by the Butlers, inspected the Germanns' repairs and prepared a report which the District Court received into evidence. In large part, Mr. Dutton's conclusions formed the basis for the District Court's findings of fact. The relevant portion of that report stated as follows:

> The soil material Mr. Germann has used to build up his ditch banks [in compliance with the preliminary injunction] is classified under the USDA-SCS system as a sandy loam. This soil type is quite permeable to water and significant leakage can be expected through these newly-constructed banks. The banks will seal themselves to some degree over a 5-10 year period but will always leak to some degree in this soil.

6

### OPTIONS WHICH WOULD ALLOW MR. BUTLER TO IRRIGATE
### HIS FIELD IN THE HISTORIC FASHION

* The most direct method for returning to pre-existing conditions would be for Mr. Germann to restore the ditch and banks to their original configuration. Banks should be 1-2 feet higher than the expected water level. They should be 3-4 feet thick on the downhill side and re-vegetated. Any construction activity will expose soils with high permeabilities which can be expected to suffer excessive significant leakage for 5-10 years and will always leak to some degree. Lining with bentonite, open-topped culvert or other material would prevent this problem. Bentonite should be used only under direction of SCS personnel or other qualified professional[s] using SCS specifications. All ditch re-locations and re-construction should be surveyed for proper grade and bank height.

* A second option is to have Mr. Germann build up the banks on his property to a greater height. Several important concerns must be satisfied for this to work satisfactorily. The banks must be of sufficient height and width (1-2 ft above the expected water level and 3-4 feet thick on downhill side). The banks must be re-vegetated. Either significant leaks must be expected for a period of 5-10 years, or the ditch must be lined. All ditch re-locations and re-constructions should be surveyed for proper grade and bank height.

During his testimony, Mr. Dutton explained that he made his recommendations simply to insure continued flow through the ditch on the Germanns' property and to avoid a problem with the ditch washing out in the future, thereby eliminating the flow of water to the Butlers' property. None of these potential problems was a cause for concern before the Germanns destroyed the banks of the ditch.

Even the Germanns' own expert, Andrew Fisher, testified that further restoration was necessary in order to guarantee the integrity of the restored ditch bank. Mr. Fisher, a civil engineer who specializes in water resources engineering, testified that for their own benefit he recommended to the Germanns that they strengthen the

7

ditch bank in the area that had been disturbed. He agreed during testimony at trial that his recommendation was similar to the recommendation made by Mr. Dutton.

Specifically, Mr. Fisher recommended that the ditch banks be increased by a height of six to 12 inches throughout roughly a third of the length of the ditch on the Germann property. He agreed that there was legitimate concern about the stability of the banks where the soil had been recently replaced, and explained the problem as follows:

> The reason I recommended thickening was when I viewed it, the condition at the time I viewed it, the bank had been recently--it was recent construction, and I didn't feel the soil had settled to a point where it was stable enough to withstand some higher flows. With higher flows, we're not just talking elevation, there's velocity, forces on the insides of the bank, you could get scouring on the bank from higher velocities.

Mr. Fisher also agreed that good vegetative cover on the bank would help its stability, but that when he viewed the property the bank was mostly bare dirt. Tom Gale, the special master who initially found the Germanns' restoration efforts adequate, testified that he did not disagree with Mr. Fisher's opinion that the ditch banks on the Germanns' property needed to be thickened through about a third of their length.

Based upon the testimony in this case the District Court had no choice other than to arrive at the decision that it reached. The District Court found as a fact that:

> [T]he banks of the Waddell Ditch which Mr. Germann supposedly restored are only of marginal height and that the soil used in the restoration process is a sandy loam that is quite permeable and will require 5-10 years to

8

fully seal without lining. Mr. Dutton concluded in his report of May 13, 1990 that the only way to solve the problems caused by Defendants without forcing Plaintiffs to modify their irrigation system and practices is to have the banks of the Waddell Ditch through Defendants' property further heightened, thickened, and re-vegetated and lined.

This finding of fact was fully supported by not only substantial evidence, but by the uncontroverted evidence offered at the time of trial. The Germanns did not restore the ditch to a condition where it could be considered reliable for future use. Once the Germanns disturbed the ditch, it was not sufficient merely to put the dirt back on the banks. Further repairs were necessary to restore the utility and safety of the ditch.

In civil bench trials, we will not overturn the trial court's findings of fact unless they are "clearly erroneous." Rule 52(a), M.R.Civ.P. We conclude that the District Court's finding that further restoration was necessary to return the Butlers to their rightful position was not clearly erroneous. We hold that the District Court did not err in ordering the Germanns to make further repairs.

## II

Did the District Court err in permanently enjoining the Germanns from obstructing, encroaching upon, disturbing, or otherwise impairing the Butlers' ditch easement?

In its final judgment, the District Court issued the following permanent injunction:

[A] permanent and perpetual injunction is hereby granted against Defendants and Defendants' servants, agents, employees, and all other persons acting under the

9

control, authority, or direction of Defendants, and they are hereby enjoined, restrained, and commanded from obstructing, encroaching upon, disturbing, or otherwise impairing Plaintiffs' ditch easement, known as the Waddell Ditch, or from interfering with Plaintiffs' rights to enter, inspect, repair, and maintain said ditch easement as allowed by law. The restoration-modification requirements of Section 2 of this Judgment are an exception hereto. In addition Defendants shall be privileged to repair or replace any existing culverts on their property as necessary with culverts of equal or greater capacity.

We note at the outset that ditch encroachment is prohibited by statute in Montana. Section 70-17-112, MCA. Thus, the District Court's injunction did not change the obligation that the Germanns already had under the law.

The Montana statute governing final injunctions provides:

[A] final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant where:
. . . .
(3) the restraint is necessary to prevent a multiplicity of judicial proceedings . . . .

Section 27-19-102, MCA. The Butlers satisfied this statute at trial. The Germanns owed the Butlers an obligation to refrain from impairing the Waddell Ditch easement. *See* § 70-17-112, MCA. There was sufficient evidence for the District Court to find that restraint was necessary in order to avoid further judicial proceedings which would present unnecessary expense to both parties.

The Germanns argue that the permanent injunction was unwarranted because they say they have no plans to interfere with the ditch in the future. We disagree. The issuance or refusal of an injunction is addressed to the discretion of the trial court.

10

*Frame v. Frame* (1987), 227 Mont. 439, 740 P.2d 655. Here the District Court found a likelihood of future interference by the Germanns with the Butlers' ditch easement.

The record supports this finding by the District Court. At the hearing on the preliminary injunction, John Germann testified that he planned further relocation of the ditch on his property in order to facilitate the construction of a fish pond. He did not retreat from this position at the hearing on the permanent injunction. It was clear from the testimony at the second hearing that Germann did not take the Butlers' concerns seriously.

We hold that the District Court did not err in permanently enjoining any further obstruction, encroachment, disturbance, or impairment of the Butlers' ditch easement.

### III

Did the District Court err in awarding the Butlers $2000 as damages?

Darwin Titeca, the Butlers' lessee, testified that as the result of the damage to the ditch he was unable to irrigate and that he had to purchase winter fodder elsewhere at a cost of $2380. The Butlers then credited Titeca with $2000 on his lease payment. Titeca also testified that he believed the Butlers gave him a credit for services he performed for them while leasing the property and that he thought he was underpaid by $1000 to $1500.

From this, the Germanns conclude that the services were worth $1000, that the lease credit was for both the services and the replacement fodder, and that, therefore, the lost hay was only

11

worth $1000. We believe the District Court could have reasonably inferred that Titeca meant he was underpaid by $1000 to $1500 even after the Butlers gave him a credit for the hay.

As we explained in Part I of this opinion, we will not overturn the trial court's findings in a civil bench trial unless they are clearly erroneous. Rule 52(a), M.R.Civ.P. The court's finding that the lease credit was for lost hay was not clearly erroneous. Accordingly, we hold that the District Court did not err in awarding the Butlers $2000 in damages.

## IV

Did the District Court err in awarding the Butlers attorney's fees and costs incurred subsequent to the preliminary injunction?

The statute prohibiting ditch encroachment authorizes an award of costs and attorney's fees to the prevailing party in actions brought to enforce its provisions. Section 70-17-112, MCA. The Butlers prevailed below. Since we affirm that judgment, we necessarily conclude that the District Court did not err in awarding the Butlers their costs and attorney's fees. Furthermore, because the Butlers have prevailed on appeal, we award them the costs and attorney's fees they have incurred by reason of this appeal.

Affirmed.

_____
Justice

12

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice John Conway Harrison, dissenting.

I dissent. I view the facts of this case differently than the majority and would reverse the District Court's judgment ordering Germanns to further reconstruct the portions of Waddell Ditch on their property.

I feel the District Court incorrectly found that Butlers were unable to obtain adequate irrigation water after Waddell Ditch was repaired by Germanns in 1989. According to Germanns, if Butlers were receiving adequate irrigation water after the 1989 repairs to the ditch, it is my view that the District Court erred by ordering Germanns to do further work on the ditch.

In actions tried without a jury we may not set aside findings of fact unless the findings are "clearly erroneous," and we are required to give "due regard" to the opportunity of the trial court to judge the credibility of witnesses. Rule 52(a), M.R.Civ.P. Findings of a district court are not clearly erroneous when based upon substantial credible evidence. Boylan v. Van Dyke (1991), 247 Mont. 259, 264, 806 P.2d 1024, 1027; Pare v. Morrison (1990), 241 Mont. 218, 222, 786 P.2d 655, 657.

Viewed in the light most favorable to the prevailing party, a district court's decision must be reversed if its findings are not based upon substantial evidence and if a clear preponderance of evidence supports contradictory findings. Christensen v. Britton (1989), 240 Mont. 393, 401-02, 784 P.2d 908, 913. If the record shows that the same result would have been attained despite the error, an error by the trial court against the appellant is not grounds for reversal. Rule 14, M.R.App.P.

14

The District Court made the following finding:

Plaintiffs' lessee has since [1989 repairs to Waddell Ditch] encountered extreme difficulty in obtaining a sufficient flow of water through the Waddell Ditch to irrigate his downstream fields, resulting in a loss of hay production to the extent of approximately 25 tons.

Butlers concede that the disputed finding is erroneous since Germanns' 1989 repairs to Waddell Ditch restored sufficient water flow to permit irrigation of the Butler property in 1990. Butlers disagree, however, with Germanns' assertion that the District Court's order was based solely upon a misconception that water flow continued to be impeded at the time the trial was held and point to other findings supporting the District Court's judgment.

Through my examination of the record and findings I feel that the District Court erred in finding that the flow of water through Waddell Ditch continues to be impeded. The District Court ignored the special master's report that Germanns had complied fully with the District Court's order.

The court followed the recommendations of the expert hired by Butlers, Barry Dutton, and ordered Germanns to elevate the lower bank of Waddell Ditch by one foot, to widen the banks to three feet at the top, compact the banks, revegetate the banks, and line the ditch with bentonite. Mr. Germann altered the ditch in 1989 because water was overflowing its low banks and blocking the entrance to his garage. Testimony did not indicate that the ditch had been lined. The law requires that the plaintiff be restored to the position he would have attained had the wrong not occurred. Billings Clinic v. Peat Marwick Main & Co. (1990), 244 Mont. 324,

15

345, 797 P.2d 899, 913. In this case, the District Court's judgment, by ordering Germanns to build a better ditch than existed before Germanns bought the property, restored Butlers to a better position than they occupied before the wrong.

In addition, the court ignored the special master's report that Germanns had restored Waddell Ditch and that water was flowing onto Butlers' property in sufficient amounts to allow for irrigation. The special master was the District Court's own appointee and Chief Water Commissioner of the Fourth Judicial District, Tom Gale. He visited the site on five occasions and took several photographs of the work in progress. Mr. Gale was fully qualified to judge the restoration of Waddell Ditch.

Finally, Butlers themselves concede that the District Court's finding that Butlers continued to have difficulty obtaining sufficient water for irrigation was erroneous. I would reverse the portion of the District Court's judgment ordering Germanns to further reconstruct the portions of Waddell Ditch on their property.

_____
                Justice

16

December 12, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


David L. Pengelly
Knight, Maclay & Masar
P.O. Box 8957
Missoula, MT  59807

Jeffrey H. Langton
Attorney at Law
P.O. Box 1497
Hamilton, MT  59840

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy