No. 05-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 234

MUSTANG HOLDINGS, LLC,

       Plaintiff and Appellant,

  v.

MARGE ZAVETA,

       Defendant and Respondent.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 03-629,
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Darrel L. Moss, Sullivan, Tabaracci & Rhoades, Missoula, Montana

       For Respondent:

       Phillip J. O'Connell, Attorney at Law, Missoula, Montana

Submitted on Briefs:  August 22, 2006

Decided:  September 19, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Mustang Holdings, LLC (Mustang) appeals from an order of the Fourth Judicial District Court, Missoula County, granting defendant Marge Zaveta (Zaveta) a preliminary injunction. The Order required Mustang to restore an irrigation ditch on its property that provides water to Zaveta's property. We reverse and remand.

¶2 Mustang presents the following issues on appeal:

¶3 Did the District Court manifestly abuse its discretion when it granted Zaveta's motion for a preliminary injunction?

¶4 Did the District Court abuse its discretion when it awarded attorney's fees to Zaveta?

### PROCEDURAL AND FACTUAL BACKGROUND

¶5 Mustang and Zaveta own neighboring land on U.S. Highway 12, just west of Lolo in Missoula County, Montana. Water from Lolo Creek has irrigated Zaveta's property for more than one hundred years via an irrigation ditch that crosses Mustang's property. The 1937 Lolo Creek Water Decree determined that Joseph Andrews, a predecessor-in-interest to Zaveta, originally appropriated the water rights associated with the ditch in 1884. Following the 1960 Water Resource Survey, the ditch was recognized as the Hendrickson-Kuney Ditch. The ditch ceases to be recognized as anything today, however, because Mustang bulldozed it late in 2004.

¶6 Zaveta held two claims for the water rights associated with the ditch with the Montana Department of Natural Resources and Conservation. The claims allowed

Zaveta to begin irrigating annually in mid-March. Zaveta at some point failed to pay a $150.00 per claim processing fee as part of the statewide basin adjudication, however, and the Water Court terminated her claims in October 1999. Zaveta nonetheless continued to divert water through the ditch uninterrupted. Zaveta finally paid the claim processing fees in August 2003, however, and as a result the Water Court reopened Zaveta's case. The Water Court issued an order on November 4, 2003, reinstating Zaveta's claims.

¶7 Meanwhile, Mustang initiated the present action on July 31, 2003, when it filed a complaint in District Court seeking a declaratory judgment that Zaveta had no right to use the ditch. Mustang based its complaint on the theory that the Water Court had terminated Zaveta's water rights permanently in October 1999, thereby extinguishing any easement in favor of Zaveta across its property as a matter of law in accord with § 70-17-111(3), MCA. Zaveta answered Mustang's complaint and asserted as an affirmative defense that she "is the owner of an easement for a ditch located on [Mustang's] property." Zaveta's answer also prayed for "such other and further relief that the Court deems just and proper."

¶8 Mustang moved for summary judgment on December 4, 2003. The District Court determined that genuine issues of material fact existed in light of the Water Court's order reinstating Zaveta's water rights, and denied the motion on August 20, 2004. To date, the District Court has not issued a final order regarding Mustang's action for declaratory judgment.

¶9 Mustang destroyed the very ditch at issue—without leave of the court—in November and December 2004. Zaveta in response moved for a preliminary injunction on March 16, 2005. She alleged that Mustang violated § 70-17-112, MCA, which prohibits interference with a party's ditch easements, and that § 70-17-112(5), MCA, entitled her to attorney's fees. Zaveta also alleged that Mustang destroyed Zaveta's property "with intent to defraud Zaveta" and that Mustang acted "in violation of Zaveta's rights respecting the subject of the action and tending to render the judgment ineffectual."

¶10 The court held a hearing on May 10, 2005, and issued an order on June 29, 2005. The order granted Zaveta's motion for a preliminary injunction and required Mustang to restore the ditch. The court further ordered Mustang to pay the costs and reasonable attorney's fees Zaveta incurred in connection with the preliminary injunction. Mustang appeals.

## STANDARD OF REVIEW

¶11 We review the district court's decision to deny or grant a preliminary injunction for a manifest abuse of discretion. *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, ¶ 12, 106 P.3d 1185, ¶ 12. A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Yockey*, ¶ 12.

## DISCUSSION

¶12 The core issue between the parties from the outset has been whether Zaveta still holds a valid easement through Mustang's property. If she does, then under § 70-17-112, MCA, it would be unlawful for Mustang to encroach upon or impair the ditch easement.

4

The District Court denied Mustang's motion for summary judgment on this precise matter in December 2003, reserving it for trial. Mustang then destroyed the ditch late in 2004 before the District Court could determine the parties' respective rights pursuant to the complaint for declaratory relief filed by Mustang. This action prompted Zaveta's request in March 2005, for the issuance of a preliminary injunction, the granting of which gives rise to this appeal. It bears repeating that the questions of whether Zaveta holds a valid easement, and if so, the extent of the relief to which she is entitled, remain for trial.

¶13 Mustang asserts that the District Court manifestly abused its discretion when it granted a preliminary injunction absent "any basis in law or fact." Section 27-19-201, MCA, establishes five situations in which a court may grant a preliminary injunction. The subsections of this statute are disjunctive, so findings that satisfy one subsection are sufficient for a court to issue an injunction. *Sweet Grass Farms. v. Board of County Com'rs*, 2000 MT 147, ¶ 27, 300 Mont. 66, ¶ 27, 2 P.3d 825, ¶ 27. Notably, however, of the statutory subsections that could arguably apply here, each contemplates the restraining of the commission of an act, the continuance of an act, and/or the threat that an act adverse to the opposing party's interests will be undertaken, as a predicate to the issuance of an injunction. None of these sections contemplates the issuance of an injunction to correct a wrong that has already been committed and completed. Here, although the ditch was already completely destroyed by the time Zaveta sought the injunction, the District Court nonetheless granted Zaveta's request for a preliminary injunction and imposed an order requiring Mustang to restore the ditch.

5

¶14   Mustang argues that Zaveta's damages can be compensated monetarily and thus, do not satisfy the "great or irreparable injury" prerequisite for a preliminary injunction. More to the point, the question we must first address is whether this case, given its posture when presented to the District Court on a prayer for injunctive relief, is even amenable to an order for preliminary injunction.

¶15   In *Bouma v. Bynum Irrigation District*, 139 Mont. 360, 364 P.2d 47 (1961), the plaintiff sought relief from a judgment of the district court denying his request for injunctive relief under somewhat similar circumstances. We affirmed the district court, noting that activity undertaken by the parties with respect to irrigation ditches had been completed prior to the time that the preliminary injunction was sought.  Therefore, we concluded, remedy by injunction was moot.  We said:  "An injunction will not issue to restrain an act already committed.  Injunction is not an appropriate remedy to procure relief for past injuries, it is to afford preventive relief only."  *Bouma*, 139 Mont. at 364, 364 P.2d at 49 (internal citations omitted).  We then quoted *Mallon v. City of Long Beach*, 330 P.2d 423, 431, for the following proposition:

> If . . . there is no reasonable probability that past acts complained of will recur, injunctive relief will be denied.  Injunction power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur.

*Bouma*, 139 Mont. at 364, 364 P.2d at 49.  Likewise, we held in *Billings Assoc. Plumbing, Etc. v. State Bd.*, 184 Mont. 249, 255, 602 P.2d 597, 601 (1979), that where the entire injury is in the past, an injunction cannot issue.

6

¶16  Here, the entire injury is in the past, as the ditch was completely destroyed well before the court could enter any type of injunctive relief. Thus, under the clear language of § 27-19-201, MCA, and the cases cited above, this was not a case suitable for the issuance of a preliminary injunction. By the time the District Court was requested to act, there was nothing to enjoin.

¶17  This is not to say that Zaveta is not entitled to relief. In the event she prevails at the trial of the action for declaratory judgment, then she may present evidence as to the damages she has sustained as a result of the destruction of the ditch. The District Court would have the authority at this juncture to order Mustang to restore the ditch and if indicated, permanently enjoin Mustang from further interference with Zaveta's easement rights. *See Butler v. Germann*, 251 Mont. 107, 113-114, 822 P.2d 1067, 1071 (1991)(overruled on other grounds by *Shammel v. Canyon Resources Corp.*, 2003 MT 372, 319 Mont. 132, 82 P.3d 912). However, these determinations must await final resolution of this case.

¶18  For the foregoing reasons, the District Court's decision to issue a preliminary injunction was unmistakably erroneous. Consequently, we conclude that the District Court manifestly abused its discretion. We therefore reverse the Order granting Zaveta a preliminary injunction. In light of this, we likewise reverse the District Court's award of attorney fees to Zaveta.

7

¶19     Reversed and remanded for further proceedings consistent with this Opinion.


/S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE


Justice Brian Morris dissents.

¶20     The Court's decision unnecessarily rewards Mustang's brazen behavior in interfering with Zaveta's one-hundred-and-twenty-year-old water right.  I disagree with the Court's reasoning and I cannot countenance its conclusion.

¶21     Since 1884, water flowed annually from Lolo Creek through the Hendrickson-Kuney Ditch across the property now held by Mustang to irrigate Zaveta's property.  The water abruptly stopped flowing in 2004 when Mustang bulldozed the ditch.  Aggressive behavior of this type characterized Mustang's dealings with Zaveta from the outset.  Mustang, not Zaveta, initiated this declaratory judgment action on July 31, 2003.

¶22     Mustang moved for summary judgment on December 4, 2003, no doubt prompted by the fact that the Water Court had reinstated Zaveta's water rights on November 4, 2003.  The Water Court's apparent termination of Zaveta's water rights in 1999 served as the lynchpin of Mustang's claim that the Hendrickson-Kuney Ditch no longer constituted a valid easement across its property.

¶23 Mustang never bothered to inform the District Court that the Water Court had reinstated Zaveta's water rights by the time it had filed its motion for summary judgment. When apprised of this fact by Zaveta in its brief in opposition to summary judgment, Mustang wrongly argued that the Water Court's termination of Zaveta's water rights automatically had extinguished any prescriptive easement that Zaveta may have had across its property. As noted by the Court, however, Zaveta continued to use the Hendrickson-Kuney Ditch uninterrupted from the time of the Water Court's termination of her water rights in 1999 through its reinstatement of her water rights in 2003. ¶ 6. Uninterrupted and continuous use constitutes a critical element of a prescriptive easement. *Brimstone Mining, Inc. v. Glaus*, 2003 MT 236, ¶ 21, 317 Mont. 236, ¶ 21, 77 P.3d 175, ¶ 21.

¶24 Not surprisingly the District Court denied Mustang's motion for summary judgment. The District Court reached this conclusion after finding that the "long history" of use by Zaveta and her predecessors of the ditch across Mustang's property and the resolution of Zaveta's water rights by the Water Court raised genuine issues of material fact—material indeed—regarding the viability of Mustang's claim that Zaveta no longer had a valid easement across its property. The District Court issued its order denying Mustang's motion for summary judgment on August 20, 2004.

¶25 Mustang alleges that after the District Court denied its motion for summary judgment, "this matter sat idle." Mustang, apparently seeing the writing on the wall, however, refused to sit idle and engaged in what can be described only as "self-help" to

9

improve its litigation position. Mustang simply bulldozed the ditch. Mustang gave no notice to Zaveta. As she attested in her affidavit, "[n]o one from Mustang Holdings communicated with me *in any way* before destroying the only ditch through which I can convey my irrigation water to my property." (Emphasis added). Mustang gave no notice to the district court. It simply wiped off the map a one-hundred-and-twenty-year-old ditch one fine winter day in November or December of 2004. The Court cannot even pinpoint the date of Mustang's destruction in light of the fact that Mustang never told anyone of its activities. Mustang likely recognized that someone might have said no if it had asked permission—better to act first without permission and seek to apologize later. Mustang has not even brought itself to apologize. Mustang instead cavalierly asserts that it "has numerous and improved assets to satisfy any judgment that may be entered" to cover Zaveta's loss of her easement across its property.

¶26 Zaveta moved for a preliminary injunction on March 16, 2005, in response to Mustang's bulldozing of the ditch. She alleged that Mustang violated § 70-17-112, MCA, which prohibits interference with a party's ditch easements. Mustang insisted repeatedly throughout the hearing on Zaveta's motion for preliminary injunction that the Water Court lacked jurisdiction to reinstate Zaveta's water rights. The District Court disagreed and determined that for purposes of Zaveta's motion for preliminary injunction, the Water Court had reinstated Zaveta's water rights "going back to the water right that was issued on April 1, 1890." Mustang never appealed this determination, and we must take it to be true for purposes of this appeal. As we noted in *Sweet Grass Farms, Ltd. v.*

10

*Board of County Commrs.*, 2000 MT 147, ¶ 38, 300 Mont. 66, ¶ 38, 2 P.3d 825, ¶ 38, "[i]n determining the merits of a preliminary injunction, '[i]t is not the province of either the District Court or the Supreme Court on appeal to determine finally matters that may arise upon a trial on the merits.'"

¶27   The District Court granted Zaveta's motion for a preliminary injunction.  In response, Mustang's counsel taunted the District Court at the conclusion of the hearing: "Would you like the notice of appeal today or tomorrow?"  Unfortunately the Court rewards such bravado when it focuses on Mustang's completed destruction of the Hendrickson-Kuney Ditch, ¶ 13, rather than on Mustang's continuing and on-going interference with Zaveta's easement across Mustang's property.  As Zaveta attested in her affidavit, she has "no other means of irrigating [her] pasture."

¶28   The Court relies on our decision in *Bouma v. Bynum Irrigation Dist.*, 139 Mont. 360, 364 P.2d 47 (1961), to support its conclusion that an injunction cannot remedy "an act already committed."  ¶ 15.  In *Bouma*, however, the plaintiff sought an injunction to prevent the owner of a canal across his property from allowing wastewater to accumulate in the canal and periodically spill onto plaintiff's property.  The canal owner took several steps to remedy the problem during the pendency of the litigation that the plaintiff deemed inadequate.  As a result, the plaintiff "resorted to the age-old remedy of self-help" before the trial and constructed a series of dams where the canal entered his property.  *Bouma*, 139 Mont. at 363, 364 P.2d at 49.  At that point, the Court refused to grant injunctive relief to the plaintiff where the harm had stopped occurring: "The dams,

11

as indicated by the record, are still in place. Therefore, it is apparent that the remedy by injunction has become moot." *Bouma*, 139 Mont. at 363-64, 364 P.2d at 49.

¶29 Here the harm continues unabated. As determined by the Water Court, ratified by the District Court for purposes of Zaveta's motion for preliminary injunction, and binding on us for purposes of this appeal, Zaveta holds two valid water rights to water from Lolo Creek. Zaveta has no means, other than the now destroyed Hendrickson-Kuney Ditch, to convey her water to her property. Remedy by injunction has not "become moot." *Bouma*, 139 Mont. at 363-64, 364 P.2d at 49.

¶30 The situation would be no different if Mustang had followed the lead of the plaintiff in *Bouma* and erected a plastic irrigation dam across the Hendrickson-Kuney Ditch where it entered its property instead of bulldozing it. Mustang would argue that preliminary injunctive relief would not be available because the harm that Zaveta seeks to prevent already has occurred—it had blocked the ditch. I have no doubt that this Court would affirm the District Court's order granting a preliminary injunction under those circumstances. The Court would order Mustang simply to remove the plastic dam and allow the irrigation water to flow, as it has for the past one-hundred-and-twenty years, during the pendency of Mustang's declaratory judgment action. The preliminary injunction would relate to Mustang's continued encroachment or impairment of Zaveta's easement.

¶31 I say that the Court would order Mustang to remove the dam based on our decision in *Butler v. Germann*, 251 Mont. 107, 822 P.2d 1067 (1991), *overruled in part on other*

12

*grounds*, *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. There Germann modified the Butlers' irrigation ditch without their permission, including "blad[ing] off from 12 to 18 inches of the downslope bank" and using the dirt as fill in his own barnyard. *Butler*, 251 Mont. at 109, 822 P.2d at 1069. The district court granted a preliminary injunction ordering Germann to raise the banks of the ditch. *Butler*, 251 Mont. at 109, 822 P.2d at 1069. We affirmed the district court's injunction requiring Germann to raise the banks of the irrigation ditch to its former height despite the fact that Germann's unauthorized blading already had occurred. *Butler*, 251 Mont. at 113, 822 P.2d at 1071.

¶32 Similar to Mustang's bulldozing of the Hendrickson-Kuney Ditch, Germann's unauthorized blading was completed by the time that the injured party sought a preliminary injunction. *Butler*, 251 Mont. at 109, 822 P.2d at 1069. The district court did not stop with simply requiring Germann to restore the banks of the ditch to their former heights. The testimony presented at trial indicated that restoring the banks would not necessarily restore the ditch's former water carrying capacity in light of the sandy loam soil in the area. The district court also ordered further repairs that it found necessary to restore the ditch's integrity, including heightening and thickening the banks, replanting vegetation on the banks, and lining the ditch. *Butler*, 251 Mont. at 113, 822 P.2d at 1071. We affirmed this mandatory injunction based upon our conclusion that the "fundamental purpose of any remedy is to return the plaintiff to his or her rightful

13

position, 'the position or state the party would have attained had the [wrong] not occurred.'" *Butler*, 251 Mont. at 110, 822 P.2d at 1069.

¶33 The outcome likewise would be similar if Mustang and Zaveta had followed the normal course. Mustang would have made noises about cutting off Zaveta's easement and even may have resorted to minor acts of sabotage that fall into the category of nuisances. And Zaveta, rather than Mustang, likely would have filed an action to abate the nuisances to ensure the continued viability of its easement. This Court has consistently held that an injunction is a proper remedy to abate a continuing nuisance. *Boyer v. Karagacin*, 178 Mont. 26, 32, 582 P.2d 1173, 1177-78 (1978), *overruled in part on other grounds*, *Shammel*, ¶ 12; *Floyd v. City of Butte*, 147 Mont. 305, 313, 412 P.2d 823, 827 (1966); *Wilhite v. Billings & Eastern Montana Power Co.*, 39 Mont. 1, 11, 101 P. 168, 171 (1909). Damages are inadequate in cases of continuing nuisance because the injured party is forced to bring a multiplicity of suits in successive actions for the recurring injury. *See Floyd*, 147 Mont. at 313, 412 P.2d at 827; *Hart v. Wagner*, 40 A.2d 47, 51 (Md. 1944).

¶34 The outcome should be no different here where Mustang has elected to forego preliminaries and wipe the Hendrickson-Kuney Ditch off the map. The end result is the same—Mustang has encroached or impaired, and will continue to encroach or impair, Zaveta's easement during the pendency of Mustang's declaratory judgment action. I fear that by its decision today the Court announces a new twist on an old adage along the lines

14

of "the Court helps those who help themselves." The Mustangs of the world will get the message loud and clear.

¶35 The Legislature has determined that easements conveying irrigation water, in the form of ditches, play such an important role in the agricultural life of Montana, that it has singled out irrigation ditches from all other types of easements as deserving of special protection. Section 70-17-112(2), MCA, provides that no person may "encroach upon or otherwise impair" any ditch used for irrigation water. The statute includes specifically any "ditch easement obtained by prescription," § 70-17-112(4), MCA, and consequently the protections of the statute would apply to Zaveta's ditch easement. No doubt exists that Mustang has "encroach[ed] upon or otherwise impair[ed]" Zaveta's ditch that she used for irrigation water. They bulldozed it. If Zaveta were to prevail on the declaratory judgment complaint, Mustang has encroached or impaired her irrigation ditch by bulldozing it in contravention of § 70-17-112(2), MCA. It is well settled that wrongful conduct of this type would be subject to potential injunctive relief. *See e.g. Engel v. Gampp,* 2000 MT 17, ¶ 56, 298 Mont. 116, ¶ 56, 993 P.3d 701, ¶ 56 (upholding district court's enjoinment of interference with dominant tenant owner's secondary easement to access irrigation ditch under § 70-17-112(4), MCA), *overruled in part on other grounds*, *Shammel,* ¶ 12; *Ducham v. Tuma*, 265 Mont. 436, 442-43, 877 P.2d 1002, 1007 (1994) (enjoining trespass), *overruled in part on other grounds*, *Shammel,* ¶ 12.

¶36 As discussed above in *Butler*, we affirmed the district court's mandatory injunction requiring the Germanns to restore the irrigation ditch to its former height.

15

*Butler*, 251 Mont. at 113, 822 P.2d at 1071. We recognized the need for the mandatory injunction as the sole remedy available to return the Butlers to their former position. We also justified the mandatory injunction in light of the Germanns' violation of § 70-17-112, MCA. *Butler*, 251 Mont. at 114, 822 P.2d at 1072. Likewise in *Engel*, ¶ 58, we affirmed the district court's order enjoining the Gampps from interfering with the Engels' exercise of their *secondary* easement rights under § 70-17-112(1), MCA. Mustang has interfered, and will continue to interfere, with Zaveta's *primary* easement rights under § 70-17-112, MCA, during the pendency of this litigation. The District Court's order provides the sole remedy for the type of self-help employed by Mustang in this instance.

¶37    The Court nevertheless concludes that the District Court's decision to issue a preliminary injunction was a manifest abuse of discretion. ¶ 18. The Court stops short its analysis upon determining that "the entire injury is in the past" and therefore "this was not a case suitable for the issuance of a preliminary injunction." ¶ 16. As I discussed in ¶ 29, however, Mustang continues to encroach or impair Zaveta's easement. Zaveta's easement, in the form of the Hendrickson-Kuney Ditch, no longer could carry Zaveta's irrigation water on whatever winter day in 2004 that Mustang bulldozed it, it cannot carry Zaveta's irrigation water today, and it will not be able to carry Zaveta's irrigation water in the future. The Court should have proceeded to analyze whether Zaveta demonstrated sufficiently to the District Court that the situation warrants preservation of her property or rights in *status quo* until trial. *Sweet Grass Farms*, ¶ 28.

¶38 We have defined the *status quo* as "'the last actual, peaceable, noncontested condition which preceded the pending controversy.'" *Sweet Grass Farms*, ¶ 28. Mustang claims that its act of self-help in bulldozing the ditch changed the *status quo* in its favor. It contends that the act for which Zaveta seeks a preliminary injunction "has already occurred and completed," and thus, there is "no *status quo* to protect." The "pending controversy" began on July 31, 2003, however, when Mustang filed an action seeking declaratory relief in a complaint to extinguish any easement Zaveta may have held to transport water through the irrigation ditch on Mustang's property. As a result, "the last actual, peaceable, noncontested condition which preceded the pending controversy" included the existence of the ditch on Mustang's property.

¶39 Interpreting *status quo* in the instant case to relate back to the condition of the ditch when Zaveta filed the motion for a preliminary injunction, rather than the ditch's condition at the time Mustang filed its complaint, will allow Mustang, or other impatient real-estate developers, to interfere with whomever's ditch easement they choose, content with the knowledge it "has numerous and improved assets to satisfy any judgment that may be entered." Zaveta's use of the irrigation ditch preceded the pending controversy. Consequently, an irrigation ditch that carries water to Zaveta's property is the *status quo* in the instant case. *See Sweet Grass Farms*, ¶ 28.

¶40 I would preserve the *status quo* as it existed when Mustang filed its complaint on July 31, 2003. I would affirm the District Court's mandatory injunction directing

17

Mustang to restore the Hendrickson-Kuney Ditch to the condition in which it existed on that date. I dissent from the Court's failure to do so.

/S/ BRIAN MORRIS

Justices W. William Leaphart and John Warner join in the foregoing dissent.

/S/ W. WILLIAM LEAPHART

/S/ JOHN WARNER