JUSTICE MORRIS
dissents.
¶20 The Court’s decision unnecessarily rewards Mustang’s brazen behavior in interfering with Zaveta’s one-hundred-and-twenty-year-old water right. I disagree with the Court’s reasoning and I cannot countenance its conclusion.
¶21 Since 1884, water flowed annually from Lolo Creek through the Hendrickson-Kuney Ditch across the property now held by Mustang to irrigate Zaveta’s property. The water abruptly stopped flowing in 2004 when Mustang bulldozed the ditch. Aggressive behavior of this type characterized Mustang’s dealings with Zaveta from the outset. Mustang, not Zaveta, initiated this declaratory judgment action on July 31, 2003.
¶22 Mustang moved for summary judgment on December 4,2003, no doubt prompted by the fact that the Water Court had reinstated Zaveta’s water rights on November 4, 2003. The Water Court’s apparent termination of Zaveta’s water rights in 1999 served as the lynchpin of Mustang’s claim that the Hendrickson-Kuney Ditch no longer constituted a valid easement across its property.
¶23 Mustang never bothered to inform the District Court that the Water Court had reinstated Zaveta’s water rights by the time it had filed its motion for summary judgment. When apprised of this fact by Zaveta in its brief in opposition to summary judgment, Mustang wrongly argued that the Water Court’s termination of Zaveta’s water rights automatically had extinguished any prescriptive easement that Zaveta may have had across its property. As noted by the Court, however, Zaveta continued to use the Hendrickson-Kuney Ditch uninterrupted from the time of the Water Court’s termination of her water rights in 1999 through its reinstatement of her water rights in 2003. ¶ 6. Uninterrupted and continuous use constitutes a critical element of a prescriptive easement. Brimstone Mining, Inc. v. Glaus, 2003 MT 236, ¶ 21, 317 Mont. 236, ¶ 21, 77 P.3d 175, ¶ 21.
¶24 Not surprisingly the District Court denied Mustang’s motion for summary judgment. The District Court reached this conclusion after finding that the “long history” of use by Zaveta and her predecessors of the ditch across Mustang’s property and the resolution of Zaveta’s water rights by the Water Court raised genuine issues of material fact-material indeed-regarding the viability of Mustang’s claim that Zaveta no longer had a valid easement across its property. The District Court issued its order denying Mustang’s motion for summary judgment on August 20, 2004.
*477 ¶25 Mustang alleges that after the District Court denied its motion for summary judgment, “this matter sat idle.” Mustang, apparently seeing the writing on the wall, however, refused to sit idle and engaged in what can be described only as “self-help” to improve its litigation position. Mustang simply bulldozed the ditch. Mustang gave no notice to Zaveta. As she attested in her affidavit, “[n]o one from Mustang Holdings communicated with me in any way before destroying the only ditch through which I can convey my irrigation water to my property.” (Emphasis added). Mustang gave no notice to the district court. It simply wiped off the map a one-hundred-and-twenty-year-old ditch one fine winter day in November or December of 2004. The Court cannot even pinpoint the date of Mustang’s destruction in light of the fact that Mustang never told anyone of its activities. Mustang likely recognized that someone might have said no if it had asked permission-better to act first without permission and seek to apologize later. Mustang has not even brought itself to apologize. Mustang instead cavalierly asserts that it “has numerous and improved assets to satisfy any judgment that may be entered” to cover Zaveta’s loss of her easement across its property.
¶26 Zaveta moved for a preliminary injunction on March 16,2005, in response to Mustang’s bulldozing of the ditch. She alleged that Mustang violated § 70-17-112, MCA, which prohibits interference with a party’s ditch easements. Mustang insisted repeatedly throughout the hearing on Zaveta’s motion for prehminary injunction that the Water Court lacked jurisdiction to reinstate Zaveta’s water rights. The District Court disagreed and determined that for purposes of Zaveta’s motion for preliminary injunction, the Water Court had reinstated Zaveta’s water rights “going back to the water right that was issued on April 1, 1890.” Mustang never appealed this determination, and we must take it to be true for purposes of this appeal. As we noted in Sweet Grass Farms, Ltd. v. Board of County Commrs., 2000 MT 147, ¶ 38, 300 Mont. 66, ¶ 38, 2 P.3d 825, ¶ 38, “[i]n determining the merits of a preliminary injunction, ‘[i]t is not the province of either the District Court or the Supreme Court on appeal to determine finally matters that may arise upon a trial on the merits.’ ”
¶27 The District Court granted Zaveta’s motion for a prehminary injunction. In response, Mustang’s counsel taunted the District Court at the conclusion of the hearing: ‘Would you like the notice of appeal today or tomorrow?” Unfortunately the Court rewards such bravado when it focuses on Mustang’s completed destruction of the Hendrickson-Kuney Ditch, ¶ 13, rather than on Mustang’s continuing *478 and on-going interference with Zaveta’s easement across Mustang’s property. As Zaveta attested in her affidavit, she has “no other means of irrigating [her] pasture.”
¶28 The Court relies on our decision in Bouma v. Bynum Irrigation Dist., 139 Mont. 360, 364 P.2d 47 (1961), to support its conclusion that an injunction cannot remedy “an act already committed.” ¶ 15. In Bouma, however, the plaintiff sought an injunction to prevent the owner of a canal across his property from allowing wastewater to accumulate in the canal and periodically spill onto plaintiffs property. The canal owner took several steps to remedy the problem during the pendency of the litigation that the plaintiff deemed inadequate. As a result, the plaintiff “resorted to the age-old remedy of self-help” before the trial and constructed a series of dams where the canal entered his property. Bouma, 139 Mont. at 363, 364 P.2d at 49. At that point, the Court refused to grant injunctive relief to the plaintiff where the harm had stopped occurring: “The dams, as indicated by the record, are still in place. Therefore, it is apparent that the remedy by injunction has become moot.” Bouma, 139 Mont. at 363-64, 364 P.2d at 49.
¶29 Here the harm continues unabated. As determined by the Water Court, ratified by the District Court for purposes of Zaveta’s motion for preliminary injunction, and binding on us for purposes of this appeal, Zaveta holds two valid water rights to water from Lolo Creek. Zaveta has no means, other than the now destroyed Hendrickson-Kuney Ditch, to convey her water to her property. Remedy by injunction has not “become moot.” Bouma, 139 Mont. at 363-64, 364 P.2d at 49.
¶30 The situation would be no different if Mustang had followed the lead of the plaintiff in Bouma and erected a plastic irrigation dam across the Hendrickson-Kuney Ditch where it entered its property instead of bulldozing it. Mustang would argue that preliminary injunctive relief would not be available because the harm that Zaveta seeks to prevent already has occurred-it had blocked the ditch. I have no doubt that this Court would affirm the District Court’s order granting a preliminary injunction under those circumstances. The Court would order Mustang simply to remove the plastic dam and allow the irrigation water to flow, as it has for the past one-hundred- and-twenty years, during the pendency of Mustang’s declaratory judgment action. The preliminary injunction would relate to Mustang’s continued encroachment or impairment of Zaveta’s easement.
¶31 I say that the Court would order Mustang to remove the dam based on our decision in Butler v. Germann, 251 Mont. 107, 822 P.2d 1067 (1991), overruled in part on other grounds, Shammel v. Canyon *479 Resources Corp., 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. There Germann modified the Butlers’ irrigation ditch without their permission, including “blad[ing] off from 12 to 18 inches of the downslope bank” and using the dirt as fill in his own barnyard. Butler, 251 Mont. at 109, 822 P.2d at 1069. The district court granted a preliminary injunction ordering Germann to raise the banks of the ditch. Butler, 251 Mont. at 109, 822 P.2d at 1069. We affirmed the district court’s injunction requiring Germann to raise the banks of the irrigation ditch to its former height despite the fact that Germann’s unauthorized blading already had occurred. Butler, 251 Mont. at 113, 822 P.2d at 1071.
¶32 Similar to Mustang’s bulldozing of the Hendrickson-Kuney Ditch, Germann’s unauthorized blading was completed by the time that the injured party sought a preliminary injunction. Butler, 251 Mont. at 109, 822 P.2d at 1069. The district court did not stop with simply requiring Germann to restore the banks of the ditch to their former heights. The testimony presented at trial indicated that restoring the banks would not necessarily restore the ditch’s former water carrying capacity in light of the sandy loam soil in the area. The district court also ordered further repairs that it found necessary to restore the ditch’s integrity, including heightening and thickening the banks, replanting vegetation on the banks, and lining the ditch. Butler, 251 Mont. at 113, 822 P.2d at 1071. We affirmed this mandatory injunction based upon our conclusion that the “fundamental purpose of any remedy is to return the plaintiff to his or her rightful position, ‘the position or state the party would have attained had the [wrong] not occurred.’” Butler, 251 Mont. at 110, 822 P.2d at 1069.
¶33 The outcome likewise would be similar if Mustang and Zaveta had followed the normal course. Mustang would have made noises about cutting off Zaveta’s easement and even may have resorted to minor acts of sabotage that fall into the category of nuisances. And Zaveta, rather than Mustang, likely would have filed an action to abate the nuisances to ensure the continued viability of its easement. This Court has consistently held that an injunction is a proper remedy to abate a continuing nuisance. Boyer v. Karagacin, 178 Mont. 26, 32, 582 P.2d 1173, 1177-78 (1978), overruled in part on other grounds, Shammel, ¶ 12; Floyd v. City of Butte, 147 Mont. 305, 313, 412 P.2d 823, 827 (1966); Wilhite v. Billings & Eastern Montana Power Co., 39 Mont. 1, 11, 101 P. 168, 171 (1909). Damages are inadequate in cases of continuing nuisance because the injured party is forced to bring a multiplicity of suits in successive actions for the recurring injury. See Floyd, 147 *480 Mont. at 313, 412 P.2d at 827; Hart v. Wagner, 40 A.2d 47, 51 (Md. 1944).
¶34 The outcome should be no different here where Mustang has elected to forego preliminaries and wipe the Hendrickson-Kuney Ditch off the map. The end result is the same-Mustang has encroached or impaired, and will continue to encroach or impair, Zaveta’s easement during the pendency of Mustang’s declaratory judgment action. I fear that by its decision today the Court announces a new twist on an old adage along the lines of “the Court helps those who help themselves.” The Mustangs of the world will get the message loud and clear.
¶35 The Legislature has determined that easements conveying irrigation water, in the form of ditches, play such an important role in the agricultural life of Montana, that it has singled out irrigation ditches from all other types of easements as deserving of special protection. Section 70-17-112(2), MCA, provides that no person may “encroach upon or otherwise impair” any ditch used for irrigation water. The statute includes specifically any “ditch easement obtained by prescription,” § 70-17-112(4), MCA, and consequently the protections of the statute would apply to Zaveta’s ditch easement. No doubt exists that Mustang has “encroach[ed] upon or otherwise impair[ed]” Zaveta’s ditch that she used for irrigation water. They bulldozed it. If Zaveta were to prevail on the declaratory judgment complaint, Mustang has encroached or impaired her irrigation ditch by bulldozing it in contravention of § 70-17-112(2), MCA. It is well settled that wrongful conduct of this type would be subject to potential injunctive relief. See e.g. Engel v. Gampp, 2000 MT 17, ¶ 56, 298 Mont. 116, ¶ 56, 993 P.3d 701, ¶ 56 (upholding district court’s enjoinment of interference with dominant tenant owner’s secondary easement to access irrigation ditch under § 70-17-112(4), MCA), overruled in part on other grounds, Shammel, ¶ 12; Ducham v. Tuma, 265 Mont. 436, 442-43, 877 P.2d 1002, 1007 (1994) (enjoining trespass), overruled in part on other grounds, Shammel, ¶ 12.
¶36 As discussed above in Butler, we affirmed the district court’s mandatory injunction requiring the Germanns to restore the irrigation ditch to its former height. Butler, 251 Mont. at 113, 822 P.2d at 1071. We recognized the need for the mandatory injunction as the sole remedy available to return the Butlers to their former position. We also justified the mandatory injunction in light of the Germanns’ violation of § 70-17-112, MCA. Butler, 251 Mont. at 114, 822 P.2d at 1072. Likewise in Engel, ¶ 58, we affirmed the district court’s order enjoining the Gampps from interfering with the Engels’ exercise of *481 their secondary easement rights under § 70-17-112(1), MCA. Mustang has interfered, and will continue to interfere, with Zaveta’s primary easement rights -under § 70-17-112, MCA, during the pendency of this litigation. The District Court’s order provides the sole remedy for the type of self-help employed by Mustang in this instance.
¶37 The Court nevertheless concludes that the District Court’s decision to issue a preliminary injunction was a manifest abuse of discretion. ¶ 18. The Court stops short its analysis upon determining that “the entire injury is in the past” and therefore “this was not a case suitable for the issuance of a preliminary injunction.” ¶ 16. As I discussed in ¶ 29, however, Mustang continues to encroach or impair Zaveta’s easement. Zaveta’s easement, in the form of the Hendrickson-Kuney Ditch, no longer could carry Zaveta’s irrigation water on whatever winter day in 2004 that Mustang bulldozed it, it cannot carry Zaveta’s irrigation water today, and it will not be able to carry Zaveta’s irrigation water in the future. The Court should have proceeded to analyze whether Zaveta demonstrated sufficiently to the District Court that the situation warrants preservation of her property or rights in status quo until trial. Sweet Grass Farms, ¶ 28.
¶38 We have defined the status quo as “‘the last actual, peaceable, noncontested condition which preceded the pending controversy.’” Sweet Grass Farms, ¶ 28. Mustang claims that its act of self-help in bulldozing the ditch changed the status quo in its favor. It contends that the act for which Zaveta seeks a preliminary injunction “has already occurred and completed,” and thus, there is “no status quo to protect.” The “pending controversy” began on July 31,2003, however, when Mustang filed an action seeking declaratory relief in a complaint to extinguish any easement Zaveta may have held to transport water through the irrigation ditch on Mustang’s property. As a result, “the last actual, peaceable, noncontested condition which preceded the pending controversy’ included the existence of the ditch on Mustang’s property.
¶39 Interpreting status quo in the instant case to relate back to the condition of the ditch when Zaveta filed the motion for a preliminary injunction, rather than the ditch’s condition at the time Mustang filed its complaint, will allow Mustang, or other impatient real-estate developers, to interfere with whomever’s ditch easement they choose, content with the knowledge it “has numerous and improved assets to satisfy any judgment that may be entered.” Zaveta’s use of the irrigation ditch preceded the pending controversy. Consequently, an irrigation ditch that carries water to Zaveta’s property is the status quo *482 in the instant case. See Sweet Grass Farms, ¶ 28.
¶40 I would preserve the status quo as it existed when Mustang filed its complaint on July 31, 2003. I would affirm the District Court’s mandatory injunction directing Mustang to restore the Hendrickson-Kuney Ditch to the condition in which it existed on that date. I dissent from the Court’s failure to do so.
JUSTICES LEAPHART and WARNER join in the foregoing dissent.